Abas O. MUSA, Appellant,

v.

CONTINENTAL INSURANCE COMPANY, Appellee.

No. 92–CV–975.

District of Columbia Court of Appeals.

Argued Oct. 15, 1993.
Decided July 14, 1994.

I

On August 1, 1990, Mr. Musa was involved in an automobile accident while driving along Missouri Avenue, N.W., in which he sustained injuries to his back and his right foot. According to Musa, the accident resulted from the negligent driving of another motorist whose identity he never ascertained because the other driver fled from the scene. At the time of the accident, Musa was enrolled as a full-time student at the University of the District of Columbia (UDC), worked "off and on" as a security guard, and also worked for a fledgling cleaning business of which he had been a co-founder. Following the accident, he continued taking a full course load at UDC (eighteen to twenty credit hours per semester) and remained employed as a part-time security guard until January 1991. He alleged, however, that as a result of the accident he was unable to continue working for the cleaning service.

Musa filed a claim with Continental under his automobile insurance policy, which included both PIP and uninsured motorist coverage. His uninsured motorist coverage had a $25,000 limit, while his PIP benefits had a limit of $50,000 to pay for medical bills. His claim specifically sought reimbursement under the uninsured motorist clause of the policy.

Charles C. Parsons, Washington, DC, for appellant.

Randell Hunt Norton, with whom Kenneth G. Stallard, Washington, DC, was on the brief, for appellee.

Before TERRY, SCHWELB, and KING, Associate Judges.

TERRY, Associate Judge.

Appellant Abas Musa challenges an order by the trial court granting partial summary judgment in favor of his insurer, Continental Insurance Company, on his claim for uninsured motorist benefits. He argues that a genuine issue exists as to whether he came within one of the three statutory exceptions, found in D.C.Code § 35–2105(b)(1) (1993), permitting a recipient of personal injury protection ("PIP") benefits to maintain a separate tort action. We hold that the trial court's ruling was correct and accordingly affirm.

Musa and Continental entered into negotiations to resolve the claim, but they were unable to agree on a mutually satisfactory settlement. As a result of this impasse, Musa filed suit in the Superior Court seeking $300,000 in damages, based on Continental's alleged breach of its obligation under the uninsured motorist clause. The parties agreed to enter non-binding arbitration through the court's alternative dispute resolution program, which resulted in an award in Musa's favor of $23,597.68. Musa rejected this award, however, and requested a trial de novo,[1] apparently because he felt that the information presented to the arbitrator did not adequately reflect the severity of the injury to his foot. Specifically, Musa claimed that he "was forced to undergo three surgical

---

1. See Super.Ct.Civ.Arb.R. 10.

procedures" since the filing of his original complaint in order to stabilize the part of his foot that was most seriously injured. According to Musa, these injuries "greatly imped[ed] his ability to walk and significantly affect[ed] his ability to perform his usual daily activities."[2]

With leave of court, Musa amended his complaint by adding a count for PIP benefits to his existing claim for uninsured motorist benefits. He also modified his prayer for damages, now seeking $25,000 plus expenses under the uninsured motorist claim, and $16,-302.68 plus future medical expenses under the PIP claim, over and beyond what he had already received.[3] Continental then moved for partial summary judgment on the uninsured motorist claim, arguing that the Compulsory/No–Fault Motor Vehicle Insurance Act ("No–Fault Act"), D.C.Code §§ 35–2101 to 35–2114 (1993), generally does not permit a claimant to file for PIP benefits while also maintaining a separate action for personal injuries. Asserting that none of the statutory exceptions to this general rule applied to Musa's case, Continental maintained that Musa's claim under the uninsured motorist clause of his policy was barred by statute.

Musa based his opposition to Continental's motion on D.C.Code § 35–2105(b)(1), which states:

(b) A victim who elects to receive personal injury protection benefits may maintain a civil action based on liability of another person only if:

(1) The injury directly results in [1] substantial permanent scarring or disfigurement, [2] substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities, or [3] a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties that constitute his or her usual and customary daily activities for more than 180 continuous days.... [Bracketed numbers added.]

Invoking the second and third of the three statutory exceptions, Musa argued that he was entitled to receive PIP benefits and, at the same time, to file a separate action for uninsured motorist benefits.[4] In support of this argument, he relied on the February 19 letter from Dr. Moskovitz (see note 2, *supra*) stating that his great toe had experienced a forty percent permanent physical impairment, and on his own affidavit describing the post-accident adjustments he had been forced to make in order to walk without pain.

The trial court granted Continental's motion for partial summary judgment, ruling that Musa "has not shown a genuine issue of fact that he is prevented from performing all or substantially all of his customary daily activities. Altering his manner of walking does not rise to that level." A subsequent jury trial on the PIP claim resulted in a verdict for Continental. Musa then noted this appeal, claiming error only in the trial court's ruling on the uninsured motorist claim.

## II

▮ A motion for summary judgment should be granted whenever it is shown "that

---

2. The extent and severity of Musa's injuries are not entirely clear. In a letter dated August 22, 1991, Dr. Peter Moskovitz, the physician who performed the three operations on his foot, wrote that Mr. Musa's "wound is healing very nicely" and that he did not "see any indication of any problems that would create long-term impairment." Later, however, Dr. Moskovitz wrote in a letter dated February 19, 1992, that Mr. Musa had "a permanent physical impairment rating of 40% of the great toe. This represents a 9% physical impairment of the foot...." Dr. Moskovitz went on to conclude that the injury had resulted in "a physical impairment of 2% of the whole person...."

3. After filing his complaint, Musa had sought and received payment from Continental under the PIP provisions of his policy for his hospital and doctor bills.

4. Musa's reliance on both exceptions in the trial court resulted in some initial confusion regarding his contentions on appeal. As a result, Continental originally asserted in its brief that Musa had waived his right to rely on the second exception on appeal because he failed to assert it before the trial court. At oral argument, however, Continental conceded that Musa had preserved his claim for relief under the second exception.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *see, e.g., Smith v. Washington Metropolitan Area Transit Authority,* 631 A.2d 387, 390 (D.C.1993) (hereafter *"Smith v. WMATA"); Monroe v. Foreman,* 540 A.2d 736, 739 (D.C.1988); *Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted); *see Nader v. de Toledano, supra,* 408 A.2d at 48. If the movant meets this standard, then the burden shifts to the non-moving party "to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322, 106 S.Ct. at 2552; *see Cooke v. Griffiths–Garcia Corp.,* 612 A.2d 1251, 1255 n. 10 (D.C.1992). Mere conclusory allegations on the part of the non-moving party are insufficient to stave off the entry of summary judgment. *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991).

■ In considering an appeal from a summary judgment, we view the record in the light most favorable to the non-moving party, thereby providing that party with the benefit of "all favorable inferences that can be drawn from the evidence." *Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983); *see Coleman v. Cumis Insurance Society,* 558 A.2d 1169, 1170 n. 3 (D.C.1989). In the case at bar, however, even under this lenient standard, we conclude that appellant Musa did not demonstrate that there was any genuine is-

sue of material fact. Consequently, we must affirm the trial court's order granting Continental's motion for summary judgment.

■ Under the No–Fault Act, motorists who elect to receive PIP benefits are generally barred from pursuing private tort actions seeking damages for their injuries. D.C.Code § 35–2105(b) (1993). The No–Fault Act, however, contains certain exceptions that allow the most seriously injured accident victims to bring tort actions even after having received PIP benefits. In the present case, Musa relies upon the second of these exceptions,[5] set forth in section 35–2105(b)(1), which requires a showing that the injury has resulted in a *"substantial* and medically demonstrable permanent impairment which has *significantly affected* the ability of the victim to perform his or her professional activities or usual and customary daily activities" (emphasis added).

■ Neither the legislative history of the No–Fault Act nor any prior decisions of this court have focused on this second exception. The plain language of the statute, however, makes clear that it requires proof of two elements: (1) "substantial and medically demonstrable permanent impairment" caused by the accident which (2) has "significantly affected" the victim's ability to perform his or her "professional" or "usual and customary" daily activities. We assume for the sake of argument that there is a genuine issue as to whether Musa sustained a "substantial ... permanent impairment" from the accident.[6] We hold, however, that the undisputed facts establish that Mr. Musa's injuries did not "significantly affect" his activities.

We base our decision primarily on the fact that Musa remained enrolled as a full-time student at UDC in the semesters immediately following the accident, during which he earned between eighteen and twenty credit hours per semester. According to the record, he completed all the courses in which he was enrolled. It is plain that Musa's aca-

---

5. Musa no longer relies on the third exception, as he did in the trial court. See note 4, *supra.*

6. As we have noted, Dr. Moskovitz concluded that Musa had sustained a 40 percent permanent physical impairment to the great toe on his right foot, which translates into a 2 percent impairment of the whole person. This evidence would, at least arguably, enable reasonable jurors to reach conflicting conclusions as to the severity of Musa's injuries.

demic career was his primary activity at the time of the accident. Thus, since the accident did not interfere with his studies, there is no factual showing upon which to conclude that his usual and customary daily activities were disrupted as a result of the injuries to his foot. Moreover, Musa was also able to continue working at his part-time job as a security guard until sometime in January 1991, more than five months after the accident. These two factors substantially outweigh the allegation that after the accident he was unable to return to work at his second part-time job with the cleaning service. There is nothing in the record to show what kind of work he did on that job, or how much time he spent doing it, before the accident. What does appear from the record is that despite the accident he was able to resume the activities that had previously occupied most of his waking hours: going to school and working as a security guard.

 In the trial court and again on appeal, Mr. Musa has emphasized that the accident forced him to "alter the normal placement of his foot in that most common of usual and customary daily activities, walking," and that he therefore was entitled to bring this suit under the second statutory exception. The trial court properly rejected this argument because Mr. Musa failed to show that the alteration of his gait had "significantly affected [his] ability ... to perform his ... professional activities or [his] usual and customary daily activities," as the statute requires. D.C.Code § 35–2105(b)(1). We do not discount the seriousness of his injuries, but we hold as a matter of law that they are not serious enough to entitle him under the statute to sue for damages after receiving PIP benefits. He chose to seek PIP benefits, and he must now abide by that choice. *See Smith v. WMATA, supra,* 631 A.2d at 391.

This case cannot be compared to cases from other no-fault jurisdictions, mainly Michigan and New York, allowing recovery under somewhat similar circumstances. *See, e.g., Harris v. St. Johnsbury Trucking Co.,*

57 A.D.2d 127, 393 N.Y.S.2d 611 (1977) (permitting tort action even though plaintiff did not allege interference with her professional or academic life); *see generally* Francis M. Dougherty, Annotation, *What Constitutes Sufficiently Serious Personal Injury, Disability, Impairment, or the Like to Justify Recovery of Damages Outside of No–Fault Automobile Insurance Coverage,* 33 A.L.R.4TH 767 (1984). In keeping with its stated purpose of reducing litigation expenses stemming from insurance claims,[7] the District of Columbia No–Fault Act contains more stringent guidelines for recovering tort damages than do the comparable statutes in Michigan or New York. For instance, under the Michigan No–Fault Act, a person remains liable in tort for damages for noneconomic loss if "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MICH.COMP.LAWS ANN. § 500.3135(1) (West 1993). Likewise, the corresponding New York statute allows for such recovery "in the case of a serious injury, or for basic economic loss." N.Y. INS.LAW § 5104(a) (McKinney 1985). What distinguishes the District of Columbia statute from both of these others is the additional requirement in our law that the injury in question must "significantly affect" the ability of the injured party to perform his or her "professional" or "usual and customary" activities. Because there is no such provision in the Michigan and New York statutes, appellant's reliance on case law from those jurisdictions is misplaced.

We cannot accept Musa's invitation to treat the statutory thresholds set out in section 35–2105(b)(1) as issues of fact requiring jury resolution. "It is a threshold question of law for the court to decide whether appellant has met the strict statutory requirements as set forth in the No–Fault Act sufficient to overcome the Act's restrictions against tort actions for noneconomic losses." *Smith v. WMATA, supra,* 631 A.2d at 391 (citation omitted). Furthermore, we reject in this case, as we did in *Monroe v. Fore-*

---

**7.** *See* D.C.Code § 35–2101(a)(1), (a)(2)(D) (1993) (legislative finding that persons injured in motor vehicle accidents were "not adequately protected by [prior] law" because, among other reasons,

procedural prerequisites to compensation were "time-consuming and expensive to policyholders").

man, supra, the argument that to bar Musa's uninsured motorist claim against Continental would amount to an impermissible abridgment of a common law right. Far from violating Musa's right to maintain a tort action against Continental, our function here is simply "to ascertain and adhere to the legislative intent" of the No–Fault Act. *Monroe, supra,* 540 A.2d at 739 (citing cases).

The judgment in Continental's favor is accordingly

*Affirmed.*

SCHWELB, Associate Judge, concurring in the result.

The applicable statute requires Musa to show that the accident resulted in a "substantial and medically demonstrable permanent impairment" which significantly affected his ability to perform his "professional activities *or [his] usual and customary daily activities.*" D.C.Code § 35–2105(b)(1) (1993) (emphasis added). If each word and phrase is given independent significance, the "usual and customary" activities need not be of a professional nature. Thus, if Musa customarily goes for a daily walk, then the statute appears by its terms to apply. Given the foregoing, I am not persuaded that our statute is significantly narrower than New York's or Michigan's, *cf.* maj. op. at 1003–04, for a showing of impairment of *professional* activities is not required in the District either.

I nevertheless vote to affirm for a slightly different reason. I am not sure what a 2% injury to the whole person is, see maj. op. at 1001 n. 2, but I think I know what it isn't. It is not the kind of "*substantial* and medically demonstrable permanent impairment" which would allow Musa to recover.