**Edward L. WOODLAND, Appellant,**

v.

**DISTRICT COUNCIL 20 and AFSCME International, Appellees.**

No. 99–CV–529.

District of Columbia Court of Appeals.

Argued June 9, 2000.

Decided July 26, 2001.

Edward L. Woodland, appellant pro se.

Margaret A. McCann, Washington, DC, for appellees.

Before TERRY and STEADMAN, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

Appellant Woodland appeals from the trial court's order granting appellees' motion for summary judgment. On appeal, Mr. Woodland argues that summary judgment should not have been granted because there were genuine issues of material fact concerning (1) his claim of disability under the District of Columbia Human Rights Act ("DCHRA"), D.C.Code § 1–2501 et seq. (1999), and (2) his claim that appellees failed to comply with the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (1994). With respect to the DCHRA claim, we affirm. With respect to the FMLA claim, we vacate the order granting summary judgment and direct that it be re-entered as a dismissal under Super. Ct. Civ. R. 12(b)(6).

I

During the first part of 1997, Mr. Woodland was an employee of District Council 20 of the American Federation of State, County, and Municipal Employees ("AFSCME"), where he had worked since 1983. His duties included filing grievances, negotiating contracts, organizing bargaining units, and serving as an advocate before various local administrative agencies. In March 1996 Mr. Woodland began receiving psychiatric treatment from Dr. Willie Hamlin, who diagnosed him as suffering from stress, depression, and post-traumatic stress disorder due to his excessive workload and poor work envi-

ronment. In May 1996 Dr. Hamlin advised Mr. Woodland to take some time off from his job, and he did so, from May 10 until August 28. He returned to work on a part-time basis, at the suggestion of Dr. Hamlin, and gradually eased his way back to full-time employment.

In January 1997 District Council 20 was placed under an administratorship by the national organization of AFSCME, pending an investigation of its finances, and Letitia Taylor became Mr. Woodland's new supervisor. After Ms. Taylor received some complaints about Woodland's performance, she informed him that she was going to institute disciplinary proceedings against him for abusive conduct toward District Council 20 members at a recent meeting and for insubordination in failing to follow her instructions on another occasion. However, on March 27, 1997, when Mr. Woodland and his attorney met with Ms. Taylor and her assistant, she learned for the first time about Mr. Woodland's medical problems and assured him that his workload would be reduced.

On April 4, after Ms. Taylor had received another complaint about Mr. Woodland's performance, he called Ms. Taylor and told her that he was going to see his doctor and that he needed to take sick leave. Ms. Taylor advised him to bring a statement from the doctor when he returned to work. Mr. Woodland went to see Dr. Hamlin, who recommended disability retirement, but also expressed the view that Mr. Woodland could work in another job where the environment was more supportive. Dr. Hamlin felt that Mr. Woodland should return to work at District Council 20 only if he had a different supervisor and only if his workload was reduced; in the meantime, the doctor recommended, he should take indefinite leave. Some time later Mr. Woodland gave Ms. Taylor a letter from Dr. Hamlin asking that he be excused from work for "the past 2 weeks."

The letter also requested an unspecified amount of leave from work in the future.

On April 10 Ms. Taylor informed Mr. Woodland that he would be suspended for five days for his failure to strike arbitrators in a grievance proceeding and for twenty days for his treatment of union members in another incident. He was in fact suspended from April 21 to May 15, 1997. The suspension notices were given to his wife when she went to the office to pick up his paycheck. Ms. Taylor also asked Mr. Woodland to give her a doctor's certificate indicating the approximate duration of leave from work that he would need. A few days later she received a letter from Dr. Hamlin stating that Mr. Woodland would not be returning to work. About six weeks after that, Ms. Taylor sent Mr. Woodland a letter asking him to tell her the possible end date of his leave, and that his failure to do so by June 9, 1997, would be regarded as an abandonment of his job. In August 1997 Dr. Hamlin suggested that Mr. Woodland apply for other jobs; he did so, but did not obtain one.

On August 4, 1997, Mr. Woodland filed a complaint against appellees in the Superior Court alleging violations of the DCHRA. The complaint did not state a specific claim under the FMLA, and in fact mentioned the FMLA only once. Appellees filed an answer and then a motion for summary judgment, which the trial court granted. The court ruled that Mr. Woodland was not disabled under the DCHRA, and that he had not shown that he was an eligible employee under the FMLA. Referring to Dr. Hamlin's deposition testimony that Mr. Woodland's specific job situation was the root of his mental illness, the court concluded that "[v]iewing the evidence in the light most favorable to the plaintiff, the record before the court demonstrates that the plaintiff was only unable to work for Council 20 under the direction of Ms. Tay-

lor," not that he was unable to work at all. The court also held that Mr. Woodland had failed to establish that he was an eligible employee under the FMLA because he had presented no evidence that he had worked the requisite 1250 hours in the previous year. *See* 29 U.S.C. § 2611(2)(A). From that order Mr. Woodland brings this appeal.

## II

■ This court reviews a grant of a motion for summary judgment *de novo.* *E.g., Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868 (D.C.1997). The evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in that party's favor. *Brown v. Consolidated Rail Corp.,* 717 A.2d 309, 311 (D.C.1998). A motion for summary judgment should be granted whenever the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Musa v. Continental Insurance Co.,* 644 A.2d 999, 1001–1002 (D.C.1994); *see* Super. Ct. Civ. R. 56(c).

### A. *The Disability Claim*

Under the DCHRA, an employer may not discriminate against an employee for any of thirteen listed reasons, one of which is "disability." D.C.Code § 1–2512(a)(1). Mr. Woodland alleged in his complaint that appellees unlawfully refused to accommodate his psychiatric disability and unlawfully suspended him "for attempting to exercise his rights to take accrued sick leave as a reasonable accommodation as required by the [DCHRA]. . . ." He now contends that genuine issues of material fact remained with respect to his disability claim. The trial court ruled, however, that Mr. Woodland was not disabled because his doctor testified that he could work at another job, and that his stress, depression, and post-traumatic stress disorder were solely attributable to his specific job situation.

■ The DCHRA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." D.C.Code § 1–2502(5A). It is undisputed that working is such a major life activity. *Cf.* 29 C.F.R. § 1630.2(i) (2000) (defining "major life activities" under the Americans with Disabilities Act to include "working"). "To come within the Act's protection, a complainant must first prove that he or she has a [disability] for which reasonable accommodation can be made." *American University v. District of Columbia Comm'n on Human Rights,* 598 A.2d 416, 422 (D.C.1991). It is in this respect that Mr. Woodland's showing falls short.

The United States District Court for the District of Columbia has held that a person is not disabled under the DCHRA if all that he or she can show is an inability to work at a particular job, as opposed to working generally. In *Stroman v. Blue Cross & Blue Shield Ass'n,* 966 F.Supp. 9 (D.D.C.1997), *aff'd without opinion,* 333 U.S.App.D.C. 47, 159 F.3d 637 (1998), the court held, "Plaintiff was not precluded by her claimed disability from working generally . . . and her alleged inability to perform a *particular* job or work for a *particular* supervisor will not, without more, qualify her as disabled." *Id.* at 11 (emphasis in original; citation omitted); *see, e.g., Siemon v. AT&T Corp.,* 117 F.3d 1173, 1176 (10th Cir.1997) (construing identical language in the Americans with Disabilities Act (ADA)); *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524–525 (7th Cir.1996) (same); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726–727 (5th Cir. 1995) (same); 29 C.F.R. § 1630.2(j)(3)(i) (under the ADA, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working").

We agree with the reasoning in *Stroman* and adopt it here. Dr. Hamlin testified that Mr. Woodland's symptoms were attributable to a specific job and a specific supervisor, and there was no evidence to the contrary. Under *Stroman* an "inability to perform a particular job or work for a particular supervisor" does not constitute a disability under the DCHRA. 966 F.Supp. at 11. Mr. Woodland's evidence did not establish that he was disabled; on the contrary, it showed that he was not— *i.e.,* it showed that his illness would not have prevented him from working for a different supervisor or in a different job. Thus there was no genuine issue of material fact, and the trial court did not err in granting summary judgment against him on his DCHRA claim.

### B. *The Family and Medical Leave Act Claim*

Mr. Woodland also maintains that genuine issues of material fact remain with respect to his FMLA claim. We hold, to the contrary, that the FMLA claim was never stated with sufficient clarity in any of Mr. Woodland's pleadings in the trial court, and that the claim should have been dismissed for that reason.

Mr. Woodland's complaint did not assert any substantive deprivation of rights under the FMLA. The only mention of the FMLA in the complaint was the allegation that appellees had retaliated against him by refusing to let him "exercise his rights to take accrued sick leave as a reasonable accommodation as required by the District of Columbia Human Rights Act ... and unpaid leave under the Family and Medical Leave Act." The complaint did not even allege that Mr. Woodland was an eligible employee covered by the FMLA—*i.e.,* that he had worked the requisite number of hours during the previous year. *See* 29 U.S.C. § 2611(2)(A); *see also, e.g., Boyce v. New York City Mission Society,* 963 F.Supp. 290, 298 (S.D.N.Y.1997) (dismissing FMLA claim because of failure to plead any facts establishing that plaintiff met the 1250–hour eligibility requirement); *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1033 (W.D.N.Y.1996) (same). Finally, the prayer for relief at the end of the complaint did not even mention the FMLA.[1] The trial court therefore should have dismissed the FMLA claim, to the extent that there was one, under Civil Rule 12(b)(6), rather than granting summary judgment on it.

### III

To preserve whatever rights Mr. Woodland may have under the FMLA (about which we express no opinion here), we vacate the summary judgment on the FMLA claim and remand the case with directions to dismiss that claim under Rule 12(b)(6). We affirm the summary judgment on the DCHRA claim.

*Affirmed in part, vacated and remanded in part.*

---

1. Although Mr. Woodland is proceeding *pro se* on appeal, he was represented by counsel in the trial court. The complaint was signed, and presumably written, by counsel.