Charles E. JOECKEL, Jr.,
Appellant/Cross–
Appellee,

v.

DISABLED AMERICAN VETERANS,
Appellee/Cross–Appellant.

Nos. 99–CV–1212, 99–CV–910.

District of Columbia Court of Appeals.

Argued Feb. 5, 2002.

Decided March 21, 2002.

John W. Karr, with whom Theodore S. Allison, Washington, DC, was on the brief, for appellant/cross-appellee.

John L. Moore, Jr., Washington, DC, with whom Ada Fernandez Johnson and Christopher J. Clay were on the brief, for appellee/cross-appellant.

Before FARRELL, RUIZ, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Charles Joeckel, Jr. appeals from an order of the Superior Court which granted summary judgment against him and in favor of Disabled American Veterans (DAV) on Joeckel's complaint which alleged that DAV had "unlawfully, willfully, maliciously and without probable cause" brought a civil action against him in the state of Kentucky. Because Joeckel has not alleged that he has suffered the "special injury" required under the current state of our law to maintain such a suit, we affirm.[1]

## I.

## FACTUAL SUMMARY

Appellant served as National Adjutant of DAV from 1988 to 1993, having risen from a position as a clerk to one of DAV's highest ranking positions over the span of his 18 years as an employee for the veterans service organization. During Joeckel's tenure as National Adjutant, DAV paid $80,000 to a DAV employee and his wife as part of the settlement of a lawsuit which alleged that Joeckel had sexually harassed the employee's wife after a business meeting sponsored by DAV.[2] In the wake of controversy over the use of DAV funds to settle the suit, DAV ultimately terminated Joeckel's employment. That decision was upheld by a DAV termination review board, which found that Joeckel had, without proper authorization, used organizational funds to pay a private debt.

Subsequently, DAV sought recovery of the $80,000, which it alleged Joeckel had misappropriated, under the employee theft provisions of its insurance policy with Fireman's Fund Insurance Company (FFIC). When FFIC refused to indemnify DAV, the organization brought suit against the insurer in Jefferson County Circuit Court in Louisville, Kentucky.[3] In the same Kentucky court, DAV also filed suit against Joeckel, seeking recovery of the $80,000 on theories of conversion, breach of fiduciary duty, fraud, and various equitable theories.[4] Joeckel counterclaimed for damages and equitable relief associated with his discharge and the revocation of his DAV membership.[5]

---

1. Arising from the same action, DAV cross-appeals from an order of the trial court which denied DAV's motion to reconsider an earlier motion to dismiss. In its motion, DAV contended that Joeckel's claim was precluded as a matter of law on *res judicata* grounds, due to a prior judicial determination by a New Mexico court. We decline to address the issues raised in the cross-appeal, as the argument is rendered moot by our decision to affirm the summary judgment on the direct appeal.

2. Joeckel and DAV dispute whether the lawsuit was brought against Joeckel as an individual or in his capacity as an officer of DAV.

For the purpose of addressing the narrow issue raised in this appeal, we need not resolve that dispute.

3. *Disabled American Veterans v. Fireman's Fund Ins. Co.,* No. 94–CI–02520 (Circuit Court of Jefferson County, Kentucky).

4. *Disabled American Veterans v. Charles E. Joeckel, Jr.,* No. 95–CI–04046 (Circuit Court of Jefferson County, Kentucky).

5. On DAV's motion, the Kentucky court dismissed Joeckel's counterclaim on *res judicata* grounds, citing a Maryland default judgment

DAV eventually settled its claim against FFIC, but not for the full amount for which it had sought indemnification. The organization thus continued to pursue its action against appellant which culminated, after a full trial, in a jury verdict in favor of Joeckel on all of DAV's claims. With legal victory in hand, Joeckel then filed a one-count complaint for malicious prosecution in the Superior Court of the District of Columbia, alleging that DAV's "initiation and prosecution of the Kentucky lawsuit against [him] was unfounded and known to be so by DAV, and was done unlawfully, willfully, maliciously and without probable cause, and with an intent to injure [him]." Joeckel asserted that, as a proximate result of DAV's actions, he had suffered "economic damages and losses, humiliation and embarrassment, emotional damages, and injury to his reputation," as well as "other damages."

DAV moved for summary judgment pursuant to Super. Ct. Civ. R. 56(b), arguing that Joeckel could not establish the necessary elements of a claim for malicious prosecution. DAV first submitted that Joeckel had failed to present any evidence that he suffered the requisite "special injury" as a result of the Kentucky action. Second, the DAV contended that it had ample probable cause for bringing the Kentucky suit against Joeckel; and third, DAV claimed that Joeckel's allegations of malice could not be sustained because they were based on acts and events that had been the subject of prior final judgments in DAV's favor. The trial court granted DAV's motion for summary judgment, explaining that the expense of defending the Kentucky suit, the emotional and physical

distress of that litigation, and the harm to Joeckel's reputation, did not amount to the "special injury" necessary to support a cause of action for malicious prosecution.[6] Joeckel filed a timely notice of appeal from the trial court's order.

## II.

## ANALYSIS

We review the grant of a motion for summary judgment *de novo*. *See Woodland v. District Council 20*, 777 A.2d 795, 798 (D.C.2001). In reviewing a trial court order granting summary judgment, we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment. *See Critchell v. Critchell*, 746 A.2d 282, 284 (D.C.2000) (citing *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C.1995)). A motion for summary judgment should be granted whenever the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Woodland*, 777 A.2d at 798 (citing *Musa v. Continental Ins. Co.*, 644 A.2d 999, 1001–02 (D.C.1994)). Though we view the evidence in the light most favorable to the non-moving party, *see Bailey v. District of Columbia*, 668 A.2d 817, 819 (D.C.1995), mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment. *See Musa*, 644 A.2d at 1002. Thus, a party opposing a motion for summary judgment must produce at least enough evidence to make out a prima

against Joeckel in a suit where he had also challenged the revocation of his membership and DAV had counterclaimed seeking declaratory judgment that Joeckel's expulsion from DAV membership and the termination of his employment were proper.

6. The trial court did not address DAV's contention that Joeckel could not prove that DAV's action against him was malicious or lacked probable cause.

facie case in support of his position. *See Nader v. de Toledano*, 408 A.2d 31, 48–49 (D.C.1979).

■■■■ We have long held that in order to support an action for malicious prosecution in the District of Columbia, a plaintiff must plead and be able to prove: 1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and 4) special injury occasioned by plaintiff as the result of the original action. *See Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980) (citing *Ammerman v. Newman*, 384 A.2d 637, 639 (D.C.1978)). The special injury required has been defined as arrest, seizure of property, or "injury which would not necessarily result from suits to recover for like causes of action." *See Mazanderan v. McGranery*, 490 A.2d 180, 182 (D.C.1984) (quoting *Ammerman*, 384 A.2d at 639). In the District of Columbia, injuries to reputation, emotional distress, loss of income, and "substantial expense in defending" have all been held to fall outside the scope of the definition of special injury. *Id.* at 182; *see also Epps v. Vogel*, 454 A.2d 320, 324 (D.C.1982); *Morowitz*, 423 A.2d at 198.[7]

Appellant does not argue that our law is otherwise. Rather, he contends that the same rationale underlying the determination of special injury in *Soffos v. Eaton*, 80 U.S.App.D.C. 306, 152 F.2d 682 (1945), should allow him to proceed to trial on the merits of his malicious prosecution claim. In *Soffos*, the court reviewed the dismissal of a malicious prosecution action on the basis that special injury had not been pled by the plaintiff. *See id.* at 306, 152 F.2d at 682. There, the plaintiff had been subjected to four consecutive suits by her landlord which the plaintiff alleged had been brought "maliciously without just cause and in bad faith." *Id.* Recognizing that the common law of the District did not allow an action to lie for the recovery of damages sustained by the prosecution of a civil action with malice unless the complainant had incurred special injury such as arrest or seizure of property, the court nevertheless allowed the plaintiff in that case to continue with her suit, stating that "[s]ome sort of balance ha[d] to be struck between the social interest in preventing unconscionable suits and in permitting honest assertion of supposed rights." *Id.* at 307, 152 F.2d at 683. The court further explained that because "the right to litigate is not the right to become a nuisance[,] ... [t]he burden of being com-

---

7. The trial court applied District of Columbia law. Appellant did not request that the trial court apply the law of Kentucky, where the allegedly malicious lawsuit was brought, which does not require special injury to maintain a suit for what that jurisdiction calls the tort of "wrongful use of civil proceedings." *Prewitt v. Sexton*, 777 S.W.2d 891, 893–94 (Ky.1989) (explaining that Kentucky has adopted the RESTATEMENT (SECOND) OF TORTS, § 674 (1977) which provides that one is subject to liability "for wrongful civil proceedings if (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person

against whom they are brought."). When parties do not raise the issue of the applicability of foreign law, the general rule is that "a court is under no obligation to apply foreign law and may instead apply the law of the forum." *Rymer v. Pool*, 574 A.2d 283, 285 (D.C.1990) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 136 cmt. h (1971)) (holding that trial court had an obligation to consider the choice of law issue where plaintiff did not have an opportunity to address the issue before the trial court dismissed the action for failure to state a claim under D.C. law and action had little to do with the District). Before us, appellant does not contend that the trial court erred in applying District law, and, thus, we review the trial court's dismissal on the terms on which it was decided.

pelled to defend successive unconscionable suits is not one which would necessarily result in all suits prosecuted to recover for like causes of action," and therefore, held the court, the appellant's complaint stated a claim upon which relief could be granted. *Id.*

■ As appellant rightfully concedes, the case before us does not fit squarely within the parameters of the holding in *Soffos* because Joeckel would not be able to show that DAV pursued more than one groundless action against him. However, Joeckel contends that *Soffos* recognizes that a "balance" has to be struck and that there is evident imbalance when the expenses incurred in defending an action are excessively disproportionate to the original plaintiff's litigation objectives.[8] According to appellant, the same rationale that recognizes "special injury" when there are repeated lawsuits applies where a single groundless suit similarly results in extraordinary and abnormal litigation expenses to the original defendant. Joeckel claims that in pursuing its frivolous action against him, after obtaining $50,000 from its insurance company and having only $30,000 left to recover, the DAV deliberately caused him to spend almost $200,000 to defend himself, and that this disproportion between the DAV's purported damages and the amount he had to expend constitutes special injury.

To be sure, in at least two of our cases, special injury determinations have resulted from the recognition that, in certain circumstances, a party may unfairly sustain economic injury beyond that which is normally incidental to defending a lawsuit. This was the case in both *Soffos* and in *Davis v. Boyle Bros.*, 73 A.2d 517 (D.C. 1950), another decision in which the court allowed a malicious prosecution action to continue in the absence of arrest or seizure of property.[9] But those decisions are distinguishable in that in both cases the unusual harm suffered by the victim of the malicious prosecution was so blatant and beyond that which would normally be incurred in such litigations that the court felt sound policy required relief even though there had been no arrest or seizure of property. *See Soffos*, 80 U.S.App.D.C. at 307, 152 F.2d at 683 (stating that there was "no good reason why the law should tolerate repeated abuse of its processes"); *Davis*, 73 A.2d at 520 (explaining that the case before it "involve[d] something more than the usual suit brought maliciously and without probable cause" as the suitor "acknowledged the error [in bringing suit] and promised that the suit would be dismissed").

We do not agree with appellant that, in this case, he has clearly demonstrated the occurrence of unusual harm which would satisfy the special injury rule. First, we cannot say that appellant has been subjected to anything more than the normal expenses incident to litigation, as the record does not provide us with a basis for doing so. Other than the assertions in his brief, Joeckel has provided no proof of the expenses he incurred in defending the Kentucky litigation or the expenses incurred

---

8. At oral argument, Joeckel also claimed special injury could be shown when a malicious plaintiff's expenses greatly exceeded the amount of recovery sought.

9. In *Davis*, a plaintiff alleging malicious prosecution was allowed to continue her claim against a department store in the absence of multiple prosecutions, arrest or seizure of property, where the department store had admitted its error in pursuing a collection action, had promised her it would stop its collection efforts, yet continued to pursue a default judgment against her. 73 A.2d at 520.

by the DAV in bringing the action.[10] Second, we believe any theory that "special injury is present when the expenses of litigation [prosecution or] defense are excessively disproportionate," would be impracticable as articulated by appellant.[11] Whether it be the original plaintiff's expenses which are the focus of a disproportionality assessment or the expenses of the original defendant, there are many reasons, some beyond the control of litigating parties, why expenses incurred in sustaining or defending a legal action may surpass the amount originally sought in the suit itself. For example, an employer may legitimately bring a costly action against a former employee who has misappropriated funds, not merely to recover the actual losses sustained as a result of the employee's misconduct, but also with the hope of deterring similar future misconduct by other employees. Conversely, the fact that an employee may defend such an action to its fullest and most costly extent, even if that cost surpasses the amount originally sought by the employer, does not necessarily mean that the employee has suffered the special injury necessary to sustain a malicious prosecution claim as such costs could result from the choice of defense counsel or defense strategy employed, as well as the sometimes unpredictable ways in which litigation develops.

We note that this court has declined prior invitations to abandon or modify the special injury rule based on the long-held belief "that it best promotes this jurisdiction's policy of encouraging free access to the courts." *Bown v. Hamilton*, 601 A.2d 1074, 1080 (D.C.1992) (quoting *Morowitz*, 423 A.2d at 198). Appellant's brief presents serious arguments why the special injury rule, which has been rejected by a majority of the states, *see Morowitz*, 423 A.2d at 198, is unnecessary, and may even be contrary, to that goal. Recognizing, however, that as a division of this court we are bound by our previous decisions, appellant has not pressed that we abandon the special injury requirement as it would be only in an *en banc* proceeding that we could reconsider our adherence to the special injury requirement in malicious prosecution actions. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

Accordingly, for all of the foregoing reasons, the judgment is

*Affirmed.*

---

**10.** At oral argument, appellant cited to numerous pages in the record from which this court could determine the expenses incurred by the parties in the Kentucky litigation. Upon review of the pages cited, we disagree that the facts of record support Joeckel's contention that the amount he expended in his defense of the litigation was grossly disproportionate to the amount originally sought by DAV or that DAV incurred extraordinary expense to prosecute its claim against Joeckel.

**11.** Though we are aware that, as a division of this court, we cannot abrogate our general rule that special injury is a requirement in malicious prosecutions actions, we can consider whether, under the circumstances here, sound policy justifies the recognition of injury "which would not necessarily result in suits to recover for like causes of action." *Ammerman*, 384 A.2d at 639; *see also Carl v. Children's Hospital*, 702 A.2d 159, 160 (D.C.1997) (en banc).