JANE W., Jane X., John Y., John Z., Appellants,

v.

PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE, Appellee.

Jane Doe No. 1, Appellant,

v.

Georgetown University Medical Center, Appellee.

No. 02–CV–1289.

District of Columbia Court of Appeals.

Argued April 7, 2004.

Decided Dec. 23, 2004.

Javier CARD, Jerome Edwards, Jr., Antoine W. Rice, Appellants,

v.

UNITED STATES, Appellee.

Nos. 94–CF–754, 94–CF–801 and 94–CF–1147.

District of Columbia Court of Appeals.

Dec. 22, 2004.

Before: WAGNER, Chief Judge; TERRY, SCHWELB, FARRELL, RUIZ, REID, GLICKMAN, and WASHINGTON, Associate Judges, and * STEADMAN, Senior Judge.

* Judge Steadman was an Associate Judge of this court at time of argument. His status changed to Senior Judge on October 18, 2004.

Andrew W. Cohen, Washington, with whom Marc Fiedler, Keith W. Donahoe, Frank R. Kearney, Jon D. Pels, Lawrence J. Anderson, Ira Sherman, and Joseph Cammarata were on the brief, for appellants.

John J. Buckley, Jr., Washington, with whom Enu Mainigi, Elizabeeth A. O'Brien, and Jane E. Genster, Vice–President and General Counsel Georgetown University, were on the brief, for appellee.

Before FARRELL and WASHINGTON, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

In this timely consolidated appeal, appellant Jane Doe No. 1 and appellants Jane W., Jane X., John Y., and John Z.[1] appeal the trial court's order granting summary judgment in favor of appellee, Georgetown University Medical Center ("Georgetown" or "the hospital") on their negligent infliction of emotional distress claims.[2] We affirm the grant of summary judgment in favor of Georgetown.

In their respective complaints, appellants allege that while they were undergoing interventional radiology procedures, Jeffrey Royal ("Royal"), a radiologic technician employed by Georgetown, substituted syringes containing pain reducing medications for those containing saline; that the substituted syringes were contaminated with pathogens; and that his use of contaminated medical equipment in administering medication to patients put appellants at risk of contracting infectious diseases. Following discovery, the trial court granted summary judgment in favor of Georgetown on all counts. In its order granting summary judgment, the trial court ruled, *inter alia*, that appellants failed to establish proximate cause as well as other elements required to prove their various negligence and intentional tort claims. As to appellants' negligent infliction of emotional distress claims, the trial

court ruled that they failed to produce evidence that a zone of danger existed or that they were ever in the alleged zone of danger.

The facts established during discovery reveal that Royal was employed by Georgetown from September 15, 1999 to February 2, 2000, as a radiologic technician in the department of internal radiology. His job responsibilities did not include handling or administering narcotic medications or any other substances to patients. On February 2, 2000, Georgetown learned that Royal diverted a narcotic drug—fentanyl—from a sedated patient's medication dispensing pump.[3] As a result of this conduct, Royal was arrested and charged with Tampering with a Consumer Product in violation of 18 U.S.C. § 1365(a). At the time of Royal's arrest, which led to his immediate termination from the hospital, Georgetown also discovered that Royal had been attempting to obtain narcotics by removing discarded syringes from a medical waste container.

Upon consulting with the Center for Disease Control ("CDC") and other authorities, Georgetown sent notification letters to hundreds of patients who had undergone internal radiology procedures and who had received either of two narcotic medications—fentanyl or versed—during

---

1. Hereinafter, appellants Jane W., Jane X., John Y., and John Z. will collectively be referred to as "Jane W."

2. At the outset, we note that the trial court also granted summary judgment in favor of Georgetown on Jane W.'s claims of negligence, and negligent hiring, training, and supervision; and Jane Doe No. 1's claims of assault and battery, intentional infliction of emotional distress, negligence; and negligent hiring, training, or supervision. Because these appellants have not appealed the trial court's rulings in favor of Georgetown on the aforementioned counts, and an additional

count under a theory of *respondeat superior*, we will not consider those rulings in this appeal. "Points not urged in a party's initial brief are treated as abandoned." *In re Shearin*, 764 A.2d 774, 778 (D.C.2000) (citing *Cratty v. United States*, 82 U.S.App. D.C. 236, 243, 163 F.2d 844, 851 (1947)). *See generally* 20A JAMES WM. MOORE, *et al.*, MOORE'S FEDERAL PRACTICE § 328.20(9), at 328–12 (3d ed.2004) (failure to assert in brief grounds for reversal of challenged orders results in waiver of those issues).

3. That patient is not a party in this matter.

the period of Royal's employment. The notification letter states, in relevant part:

We are writing you because our records show that you recently underwent an interventional [sic] radiology procedure at Georgetown University Medical Center.

We have recently been informed of unauthorized and inappropriate use of medical equipment that raises the unlikely possibility that some interventional [sic] radiology patients, including yourself, could have been exposed to infectious diseases while receiving medication.

Although we have no evidence that any patient has been exposed, it is possible that during the procedure certain medical equipment may have been used that had previously come into contact with blood or other bodily fluids, thereby raising the possibility of infection. I want to reassure you that the chance of infection in this situation is extremely low.

Even so, we want to take appropriate precautions for our patients. We urge you to call us as soon as possible (ideally within two weeks) to arrange for testing, at no cost to you . . . .

Upon receiving this notification letter, Jane Doe No. 1 and the other appellants filed separate actions against Georgetown on March 1, 2000.[4] Jane Doe No. 1 alleged that Royal replaced syringes containing pain relieving medications intended for her with those containing unauthorized

substances, such as saline; that Royal administered unauthorized substances to her using contaminated needles, which exposed her to infectious diseases; and that Royal's actions put her in "reasonable apprehension of imminent bodily injury, including . . . deadly disease," and as a result of his actions she suffered "severe emotional distress, mental anguish, embarrassment, and humiliation."

Jane W.'s complaints lists two counts: negligence, and negligent hiring, training, or supervision. It was brought on behalf of herself, as well as three other individuals, see supra note 1, and alleged that Royal had "deprived patients undergoing interventional [sic] radiology procedures . . . of prescribed medication" and that he "used contaminated medical equipment in administering medication and exposed [them] to infectious diseases . . . ." The complaint further alleged that as a result of Georgetown's negligence, appellants suffered injuries "including the risk of exposure to infectious diseases, severe mental anguish associated with that risk," and "severe physical and mental pain." The gravamen of the Jane W. complaint is that appellants suffered emotional distress due to a fear of contracting an infectious disease as a result of Royal's actions.[5]

These two actions were consolidated in the trial court. After sentencing in the criminal matter,[6] Royal was deposed by appellants. In his deposition testimony, Royal stated that he began stealing narcot-

---

4. See supra note 1.

5. In its order granting summary judgment, the trial court stated that it was broadly interpreting the "severe mental anguish" and "mental pain" language contained only in Jane W.'s ad damnum clause to state a claim for negligent infliction of emotional distress. Because this issue is not before us in this appeal, we express no view on whether this is

an alternative way of pleading a claim for negligent infliction of emotional distress.

6. Upon entering into a plea agreement with the Office of the United States Attorney for the District of Columbia, Royal pled guilty to one count of Tampering with a Consumer Product in violation of 18 U.S.C. § 1365(a) on April 7, 2000. On July 6, 2000, he was sentenced to fifty-one (51) months imprisonment.

ics from the hospital in November 1999— two months after his employment began; that from November 2, 1999 to February 2, 2000, he diverted narcotics on no more than twenty (20) occasions; that in switching syringes he always used those that were sterile; and that he never engaged in conduct causing a previously used syringe to come into contact with a patient. Royal also testified that he was not sure whether the syringes he substituted had, in fact, been used on any patient. He further testified that he was unable to identify the patients from whom he diverted narcotics, but stated that he was not aware that his conduct had any effect on their treatment.

The uncontested record reveals that when a patient in the Interventional Radiology Department is to receive fentanyl, two syringes are prepared. The patient receives the primary syringe as part of regular treatment and only receives the second syringe if necessary. In cases where a patient does not require a second dose of fentanyl, hospital procedure requires that the unused syringe be disposed of in a medical waste container. In his deposition testimony, Royal explained that in half of the cases in which he replaced a syringe filled with fentanyl with that containing saline, he did so only after that patient's treatment was completed and no longer required fentanyl. In the other half of cases, Royal explained that he substituted a syringe and diverted fentanyl only after the patient received the initial dose of fentanyl.

Upon learning of Royal's actions, the Bureau of Epidemiology and Disease Control of the District of Columbia Department of Health ("DOH") conducted an investigation. In its report, the DOH concluded that Royal's actions never exposed any patient to infectious diseases; that no patient was at risk of being exposed to contaminated medical equipment,

supplies, or fluids; and that Royal never diverted fentanyl from syringes after the patient received his/her initial dose. Appellants have not produced any evidence to rebut the DOH's findings.

In granting summary judgment in favor of Georgetown on all counts of appellants' complaints, the trial court held that they failed to produce evidence to establish a prima facie case as to any of their causes of action. Specifically, the trial court observed that

[p]laintiffs have no evidence to rebut and cannot dispute Royal's [deposition] testimony. They cannot prove that Royal was at all involved in their care, despite Jane W.'s assertion that she recognized Royal when she was in the radiology waiting room .... Seeing him in a waiting room is meaningless. They cannot prove that any of Royal's conduct exposed them to a risk of infectious disease[;] that contaminated medical equipment was used in their care; or that previously used syringes were substituted for their authorized painkillers ....

Thus, the only question before this court is whether the trial court erred in granting summary judgment in favor of Georgetown on appellants' negligent infliction of emotional distress claims by ruling that Royal's conduct did not place appellants in a zone of danger or that they were ever in any such zone.

■ In reviewing a trial court's order granting summary judgment, we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment. *See Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 368 (D.C.2003); *Critchell v. Critchell*, 746 A.2d 282, 284 (D.C.2000) (internal citation omitted). A motion for summary judgment should be granted whenever the court concludes that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Woodland v. District Council 20,* 777 A.2d 795, 798 (D.C.2001) (citing *Musa v. Cont'l Ins. Co.,* 644 A.2d 999, 1001–02 (D.C.1994)). Though we view the evidence in the light most favorable to the non-moving party, mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment. *See Joeckel v. Disabled Am. Veterans,* 793 A.2d 1279, 1281 (D.C. 2002) (internal citations omitted). Thus, a party opposing a motion for summary judgment must produce at least enough admissible evidence to make out a prima facie case in support of his claim. *Id.* at 1281–82 (citing *Nader v. de Toledano,* 408 A.2d 31, 48–49 (D.C.1979)).

■ The record reveals that Georgetown filed its statement of material facts as to which there is no genuine issue pursuant to Super. Ct. Civ. R. 12–I(k). Although Jane Doe No. 1 filed her statement of disputed material facts pursuant to Rule 12–I(k), Jane W. failed to do so. Such statements are required to be filed in the trial court in conjunction with the motion for summary judgment.[7] *See* Super. Ct. Civ. R. 12–I(k). A material factual dispute must be pleaded as required by Super. Ct. Civ. R. 12–I(k) and 56(e). For purposes of our review, statements of material fact as to which there is no genuine issue and any opposition thereto are a necessary part of the record on appeal. *See Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). "We may not consider unsupported contentions of factual dispute contained elsewhere in a memorandum filed in opposition to summary judgment." *Id.* at 59 (citing *Dillard v.*

*Travelers Ins. Co.,* 298 A.2d 222, 224 (D.C. 1972)). Because Jane W. never filed her Rule 12–I(k) statement of disputed material facts in the trial court, Georgetown's statements of material facts as to which there is no genuine issue are deemed admitted without controversy as to her. *See* Super. Ct. Civ. R. 12–I(k); *Bennett, supra,* 377 A.2d at 59. Since there is no genuine issue of material fact with respect to Jane W.'s claims, the trial court's order granting summary judgment in favor of Georgetown as to those claims is affirmed.

■ Viewing the record in a light most favorable to Jane Doe No. 1, *see Joeckel, supra,* 793 A.2d at 1281, we find that there are no disputed material factual issues bearing on her negligent infliction of emotional distress claim. Here, we must determine whether Jane Doe. No. 1 has produced evidence to establish a prima facie case of negligent infliction of emotional distress to survive summary judgment. *Id.* at 1281–82. To establish a prima facie case of negligent infliction of emotional distress, Jane Doe No. 1 must show that she was in the zone of physical danger created by Royal's conduct and was caused by Georgetown's negligence to fear for her own well-being. *See Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990). She must also show that the claimed distress is "serious and verifiable." *Id.* at 1068. She need not show that an actual physical impact occurred in order to recover for negligent infliction of emotional distress. *Sowell v. Hyatt Corp.,* 623 A.2d 1221, 1224 (D.C.1993) (citing *Williams, supra,* 572 A.2d at 1068). "In applying the zone of danger rule we recognize that its logic requires that the plaintiff's presence in the zone of danger be contemporaneous with her fear for her own safety." *Jones*

---

7. In its order, the trial court stated that since it had not "received a response to [Georgetown's] [s]tatement of [m]aterial [f]acts from the Jane W. [p]laintiffs," it would treat Georgetown's statement of material facts as conceded as to her.

*v. Howard Univ.*, 589 A.2d 419, 423 (D.C. 1991). Thus, in order for Jane Doe No. 1 to make out her negligent infliction of emotional distress claim she must show that Royal's conduct placed her in a zone of physical danger when he replaced her syringes containing pain relieving medications with those containing unauthorized substances, and that she actually feared for her safety as a result of his conduct.

Jane Doe No. 1 argues that the trial court improperly ruled, as a matter of law, that Royal's conduct did not place her in a zone of danger and that no zone of danger ever existed. As pointed out, her unverified complaint alleged that Royal substituted syringes containing unauthorized substances, such as saline; that he administered unauthorized substances to her using contaminated needles, which exposed her to infectious diseases; and that his actions put her in "reasonable apprehension of imminent bodily injury ...." Absent verification, these allegations, alone, cannot create an issue of material fact.[8] The trial court, however, concluded that Jane Doe No. 1 had presented no evidence to establish a prima facie case of negligent infliction of emotional distress, and after conducting our *de novo* review, we reach the same conclusion. Jane Doe No. 1 has offered no evidence that Royal participated in her care; that he used contaminated or previously used syringes in her treatment; or that his actions put her in reasonable apprehension of imminent bodily injury. The absence of these facts is quite apparent from Royal's deposition testimony, the DOH investigation, and the deposition testimony of the appellants themselves. Jane Doe No. 1 asserts that the trial court relied solely upon Royal's deposition testimony and the results of the DOH investigation.[9] In its order granting summary judgment, however, the trial court stated:

> [t]he record speaks for itself. The plaintiffs have all admitted that they have no proof that Royal ever made any physical contact with them. They have all admitted that they cannot show that they were actually deprived of any pain medication that was needed—as opposed to unneeded medicine that was stolen. They have all admitted that there is no proof that any hospital employee ever touched them with contaminated needles or other medical devices ....
>
> ....
>
> Deposition testimony of plaintiffs has eliminated proximate cause. Negligence standing alone is not actionable.
>
> ....
>
> ... It suffices to say that each and every plaintiff has acknowledged under oath that he or she has no basis for contending that Royal deprived him or her of any medicine, that he ever touched them, that they were ever at risk for exposure to infectious disease, or that anyone tampered with medical equipment used in their care. Conse-

<hr>

8. *See* Super. Ct. Civ. R. 9–I(a); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (a verified pleading may serve as an affidavit for summary judgment purposes); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (same); 5A, CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1339, at 814 n.14 (3d ed.2004) (noting that verified pleading may be used as an affidavit if it contains facts that the affiant believes to be true and are within her knowledge and are plead with factual specificity).

9. The findings of the DOH's investigation corroborated Royal's deposition testimony that when diverting fentanyl he never used contaminated or previously used syringes on any patient, and that he never exposed any patient to the risk of contracting an infectious disease.

quently, all of the plaintiffs ... have admitted themselves out of [c]ourt.

Contrary to Jane Doe No. 1's contention that the trial court relied solely on Royal's deposition testimony and the results of the DOH's investigation, the record reveals that the court also relied, considerably, on the deposition testimony of the appellants themselves. In the aggregate, the evidence showed as a matter of law that Jane Doe No. 1 did not meet the zone of danger test.

This case is, therefore, unlike *Jones, supra*, on which appellant relies. In that case, the plaintiff was informed that she was pregnant with twins of fourteen to fifteen weeks gestation after she had already undergone x-rays and other surgical procedures. 589 A.2d at 421. The hospital and her treating physician failed to warn her of the potential consequences of those procedures before performing them, which caused plaintiff to become concerned over her health and the health of her unborn twins. *Id.* The realization that she had been pregnant when the procedures were performed upon her caused her to suffer emotional distress and anxiety over the potential injury to her unborn children. *Id.* We held that plaintiff could recover for negligent infliction of emotional distress if she could "convince the trier of fact ... that the amount of radiation to which she was exposed or the surgical procedure presented a threat to her own health or that of her unborn twins and that as a result she experienced mental distress that was 'serious and verifiable.'" *Id.*

Unlike the plaintiff in *Jones*, Jane Doe No. 1 has failed to produce any evidence that Royal's actions placed her in a zone of danger or that she was in any such zone. In arguing to the contrary, she relies almost entirely on Georgetown's decision to send the notification letter quoted earlier to hundreds of patients, including herself,

as evidence that she was in a zone of physical danger and was at risk of contracting an infectious disease. The trial court responded, and we agree, that

> [f]or public policy reasons alone, the mere transmission of the type of letter sent by Georgetown cannot create a zone of danger [where none] exists. Fear of litigation should not discourage health care facilities from making the moral and proper choice of informing its patients of potential exposure to infectious disease, as speculative as the risk [may] be. The alternative is to keep patients in the dark until a hospital can conclusively determine the extent of the danger[ ] ....
>
> ... Without question, the letter, in and of itself, cannot establish a "zone of danger."

Because Jane Doe No. 1 produced no evidence that Royal's conduct placed her in a zone of physical danger, the grant of summary judgment is

*Affirmed.*