Levester Joe GREEN, Appellant,

v.

Willa M. GIBSON & Joseph L. Dillon, Appellees.

No. 91–CV–435.

District of Columbia Court of Appeals.

Argued April 1, 1992.
Decided Aug. 28, 1992.

---

Levester Joe Green, pro se.

Obie Pinckney, Jr., Oxon Hill, Md., for appellee Gibson.

Charles H. Acker III, Washington, D.C., for appellee Dillon.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

Appellant Green was the long-time tenant of a one-family residence owned by appellee Gibson. Gibson sold the residence to appellee Dillon. Green filed suit to set aside the sale, claiming that Gibson had not fully afforded Green his rights of opportunity to purchase and of first refusal under the Rental Housing Conversion and Sale Act, D.C.Code §§ 45–1601 *et seq.* (1990) (the "Act"). The trial court without opinion granted appellees' motion for summary judgment.[1] We reverse.

## I

## A

In the District of Columbia, a residential tenant has two distinct sets of rights when an owner decides to sell that are relevant to this appeal. First, the owner must "give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." § 45–1631(a). The tenant of a single-family residence has "a reasonable period" of at least sixty days to negotiate the contract of sale, § 45–1638(2),[2] and "[t]he tenant and owner shall bargain in good faith." § 45–1634(a). Second, a tenant has a right of first refusal for a period of fifteen days after the owner has furnished the tenant with a valid sales contract to purchase by a third party. § 45–1637.

The dispute between the parties here was essentially over two elements of this statutory scheme. The first was whether Gibson bargained "in good faith." The second was whether Green's right of first refusal had been fully honored after Gibson entered into the contract of sale with Dillon. We turn to an exposition of the alleged facts.[3]

## B

In the spring of 1987, Green first made an offer to purchase the property. The offer was rejected when Gibson took the property off the market.[4] A few months

---

1. At the same time, summary judgment was granted on a related suit in which Dillon sought to evict Green from the premises. Green raised substantially the same defense there, under a claim of title. Our reversal here of the suit by Green necessarily requires a reversal of the judgment of eviction as well. Dillon makes no claim of bona fide purchaser status against Green, a tenant in possession. The Act specifically provides that the right of a third party to purchase is conditional upon exercise of tenant rights under the Act, and that "third party purchasers are presumed to act with full knowledge of tenant rights and public policy" under the Act. § 45–1633. *Cf. Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890, 896–97 (D.C. 1992) (en banc).

2. At the time Green and Gibson were negotiating, the minimum negotiating period was a flat sixty days. Later in 1988, this section was amended to provide that the tenant had thirty days within which to furnish a "written statement of interest" and at least sixty days thereafter to negotiate the sale.

3. The facts are presented, of course, in the light most favorable to Green, the non-movant. The record before the trial court contained substantial undisputed documentary evidence.

   Although Green was represented by counsel when the complaint was filed, he has acted as a pro se litigant from April 1990, before the summary judgment motion was filed, through to this appeal.

4. It appears that Green's spring 1987 offer may have been prompted by a notice of opportunity to purchase given by Gibson under the Act.

later, on November 16, 1987, Green received from Gibson the statutorily required notice of opportunity to purchase. It stated that the asking price for the house was $74,500 and that "the material terms of the sale are Owner Finance."[5]

What happened next was a subject of dispute. According to Gibson, "[d]uring the subsequent negotiation period, the parties ... were unable to reach an agreement and no contract for purchase and sale of the subject property was entered into between the parties. Despite advising Mr. Green of the seller, Ms. Gibson's willingness to ratify the contract based upon certain conditions, Mr. Green failed and refused to provide the required information and seek ratification of the contract." Green took issue with this statement in two respects. He attached a copy of an offer that he had made on December 7, 1987, to buy the property for $74,500, with the seller to take back a deed of trust for $67,050, with interest at ten percent, payable over 30 years. The offer was accompanied with an initial down payment of $1,500, which was given to Gibson's real estate agent, Joseph Harrell, and inexplicably not returned to Green until January 20, 1989. He further asserted that he had not refused to provide information or to seek ratification, and that the problem was the owner's refusal to furnish even a conditional signed contract so that he could approach financial institutions.[6]

In any event, in early March of 1989, Gibson entered into a contract of sale with Dillon, the third party. On March 10, 1989, Green received a copy of that contract and a notice of his right of first refusal.[7] That notice, as had the original offer of sale, stated that the contract price was $74,500 and that "the material terms of the sale are Owner Finance." The notice then provided:

> If you provide me with a contract offer, matching the third party contract I have accepted, you will have a minimum of sixty (60) days to obtain financing or financial assistance and go to settlement for the purchase of this housing accommodation. However, if a lending institution or agency estimates that a decision regarding financing or financial assistance will be made within ninety (90) days after the date of contracting, I will provide you with an extension of time consistent with the writtten estimate.

The contract between Gibson and Dillon provided for a purchase price of $74,500, with the seller to take back a deed of trust of $67,000, with interest of nine-and-a-half percent, to be repaid over 30 years. Green maintains that this third-party contract with Dillon was "substantially identical" to the contract offer that Green had made on December 7, 1988. This indeed appears to be the case.

A week later, on March 17, 1989, Green sent to Gibson another proposed contract in response to the notice of first refusal. That contract also provided for a purchase price of $74,500, although the financing terms are obscure. At one point, the contract states that the buyer will finance with a first deed of trust of $36,000 and a second deed of trust of $20,000, but elsewhere states that the seller will take back a first deed of trust amortized over 30 years at

---

Green's complaint asserts that the rejection of his offer came in a letter from the District of Columbia Department of Consumer and Regulatory Affairs informing him that Gibson had taken the property "temporarily off the market" pending repairs. Under the Act, notice of an opportunity to purchase must be given to the District as well as to the tenant. § 45–1632.

**5.** The phrase "Owner Finance" was typed into a blank on the printed notice form.

**6.** He supported this assertion with a letter from his counsel reporting on a conversation with Gibson's counsel, who said he was unaware that

Green had not received a signed contract. The financing at issue was apparently related to Green's ability to produce the down payment required at closing. A 1987 financial statement for Green in the record reported an annual salary of $26,000 and income from other sources of $12,000.

**7.** Green asserted that the contract with Dillon had not been sent to him within the seven-day period required by § 45–1632(3). Assuming that time period applies to the right of first refusal, the contract may not have become final until March 5, when the addendum was executed.

nine-and-a-half percent interest. The amount of the down payment at settlement is shown as only $2,000.[8] Also, a "home purchase assistance program addendum" to the proposed contract states that the contract "is contingent upon Purchaser(s) receiving final approval from D.C. Local Development Corporation," and that:

> Purchaser(s) will receive a full refund of their initial deposit if any of the following occurs:
>
> (a) The appraised value of the home is not within ten [sic] (10%) of the contract price.
>
> (b) If the home does not meet [Housing Purchase Assistance Program] inspection;
>
> (c) If Purchaser(s) is unable to obtain acceptable permanent financing.

Green contends that this March 17 offer contained no "material terms" different from the Dillon contract offer, as indicated by Gibson's notice of the right of first refusal and its statement of the "material terms," or, alternatively, that the issue is in dispute.[9] He further contends that the substantial identity between the Dillon contract and his own contract offers, especially his offer of December 7, presents a material issue of disputed fact as to whether Gibson bargained in good faith.

## II

There is no doubt that "summary judgment is a valuable tool; it facilitates just, speedy and inexpensive determinations of every action." *Vessels v. District of Columbia*, 531 A.2d 1016, 1019 (1987), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327,

106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). On the other hand, summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). This court will uphold a grant of summary judgment under Rule 56(c) only "if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, *could not* find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979) (emphasis in original; footnote omitted), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). *See Clay Properties, Inc. v. Washington Post Co.*, 604 A.2d 890, 893–94 (D.C.1992) (en banc); *Hill v. White*, 589 A.2d 918 (D.C. 1991). Applying these standards, we must reverse the grant of summary judgment.

## A

Green's claim of bad faith bargaining by Gibson presents an issue of mental state somewhat akin to disputes in which intent is at issue. As we have noted, "summary judgment should be granted sparingly in cases involving motive or intent." *Richardson v. District of Columbia*, 522 A.2d 1295 (D.C.1987); *Glekas v. Boss & Phelps, Inc.*, 437 A.2d 584 (D.C.1981). The record sufficiently puts into controversy the issue of Gibson's good faith to preclude

---

**8.** Gibson and Dillon also argue that Dillon's contract accepted the home on an "as is" basis while Green's March 17 contract included a condition "2(b)" in the addendum providing for an official inspection. However, Dillon's contract does not explicitly stipulate "as is." It contains a standard printed provision that the premises be delivered "in substantially the same physical condition as of the date of this contract," but the provision also permits the buyer to make a presettlement inspection and requires that all notices of violation of government regulations be complied with by the seller. An addendum to the contract makes reference to this provision but it is not clear whether the addendum term supersedes this printed provision.

An addendum to Green's December 7 offer states: "Property is sold in as is condition. Item 13 Paragraphs at b of original contract are hereby deleted."

**9.** Appellees' position is that the contingency provisions in the addendum plus the "deposit of $1500 only" invalidate Green's offer as matching Dillon's offer. In fact, the Green offer on its face provides for a down payment at closing of $2,000, which itself is inconsistent with the total purchase price and the stipulated loan amounts. Appellees make no reference to the arithmetical ambiguities in the offer nor to any inquiry to resolve them.

summary judgment. Her good faith is unquestionably an issue of material fact.

Indeed, one or more of the statutory presumptions of bargaining without good faith in § 45–1634(a) may be implicated.[10] That subsection provides:

(a) *Bargaining in good faith.*—The tenant and owner shall bargain in good faith. The following constitute prima facie evidence of bargaining without good faith:

(1) The failure of an owner to offer the tenant a price or term at least as favorable as that offered to a third party, within the periods specified in §§ 45–1638(4), 45–1639(4), and 45–1640(4), respectively, without a reasonable justification for so doing;

(2) The failure of an owner to make a contract with the tenant which substantially conforms with the price and terms of a third party contract within the time periods specified in §§ 45–1638(4), 45–1639(4), and 45–1640(4), respectively, without a reasonable justification for so doing; or

(3) The intentional failure of a tenant or an owner to comply with the provisions of this subchapter.

The relevant cross-reference here is to § 45–1638, which requires that an opportunity to purchase be given to the tenant of a single-family residence and provides further that: "(4) *Lapse of time.*—If 180 days elapse from the date of a valid offer under this subchapter and the owner has not sold or contracted for the sale of the accommodation, the owner shall comply anew with the terms of this subchapter." The contract of sale to Dillon was made within 180 days of the date of Gibson's notice to Green of his opportunity to purchase.[11]

**B**

Although not necessary to a reversal, some factual uncertainty also may exist concerning Green's attempted exercise of the right of first refusal through his March 17 offer, and in particular, whether that offer sufficiently matched Dillon's contract to constitute a valid exercise.[12] In considering this question, note must be made that one of the stated purposes of the Act is "[t]o discourage the displacement of tenants through conversion or sale of rental property, and to strengthen the bargaining position of tenants toward that end without unduly interfering with the rights of property owners to the due process of law." § 45–1602(1). Accordingly, courts are expressly instructed to "resolve ambiguities" in applying the Act toward the end of "strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under the law." § 45–1661.

The tenant's right of first refusal is set forth in § 45–1637 of the Act simply as follows:

In addition to any and all other rights specified in this subchapter, a tenant or tenant organization shall also have the right of first refusal during the 15 days after the tenant or tenant organization has received from the owner a valid sales contract to purchase by a 3rd party ... In exercising rights pursuant to this section, all rights specified in this subchapter shall apply except the minimum negotiation periods specified in §§ 45–1638(2), 45–1639(2), and 45–1640(2).

This last sentence of the section thus specifically makes applicable to the exercise of the right of first refusal the obligation of good faith contained in § 45–1634 (quoted in full *supra*), including the presumption against good faith that inheres where the

---

**10.** Appellees seem to suggest that bad faith can be found *only* in these presumptive situations, an untenable interpretation.

**11.** Gibson and Dillon maintain that § 45–1634(a) does not apply upon comparing Dillon's contract solely with Green's March 17 offer. However, the presumption, at least by analogy, may be read to encompass a comparison of the Dillon contract with Green's December 7 offer.

**12.** "[Q]uery if there is any incident in the law that can cause as many problems or as much trouble as a tenant's right of refusal." Milton R. Friedman, 2 Friedman on Leases § 15.6 ("Tenant's Right of Refusal") at 912 (3d ed. 1990). The printed form of notice of right of first refusal used by Gibson stated that the tenant must "match" the third party offer.

owner fails to make a contract with a tenant which "substantially conforms" with the price and terms of a third party contract within the 180–day period.

These several provisions of the Act appear to require only substantial conformity, rather than absolute identity or perfect match, between the tenant's exercise of the right and the third party offer.[13] To assess whether one offer "substantially conforms with the price and terms" of another offer may require an appreciation of the particular context of the relevant transaction. *Cf. Columbia Plaza Tenants Ass'n v. Antonelli*, 462 A.2d 433, 439 (D.C. 1983) (proposed change in tenant contract from that of third party must be viewed "in the context of the total negotiations between the parties" in determining good faith). Thus, it may not necessarily be precluded that, in the context of Gibson's repeated attempts to sell the property and Green's continuing negotiations, Green's alternative terms were substantially conforming.[14] This would present another genuine issue of material fact sufficient to survive a motion for summary judgment.

Accordingly, the summary judgment is Reversed.

---

**13.** Even if the right of first refusal were read to require more absolute conformity, the owner's refusal to enter into a substantially conforming contract with the tenant would, under § 45–1634(a)(2), bear upon the good faith bargaining requirement. Breach of this requirement in turn could negate the third party's rights quite apart from the right of first refusal. See note 1 *supra.*

**14.** This is not for a moment to discount the typically key importance of financing terms in a real estate transaction, significantly differentiating among offers and justifying differential treatment among purchases. *See Columbia Plaza Tenants Ass'n v. Antonelli, supra.* Furthermore, a property owner has freedom to determine the terms upon which the owner is willing to sell at all. *Cf. Lealand Tenants Ass'n, Inc. v. Johnson*, 572 A.2d 431, 434 (D.C.1990) (in negotiations owners may ask for subsidiary terms— *i.e.*, non-material terms—similar to those offered by third party). It is not inconceivable, however, that the perhaps intended all-cash-to-owner offer by Green could be equally or more attractive to Gibson than the proposed owner financing of Dillon's contract.