# District of Columbia
# Court of Appeals

No. 15-CV-609

PARCEL ONE PHASE ONE ASSOCIATES, LLP,

Appellant,

FILED

SEP 22 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CAR-6869-14

MUSEUM SQUARE TENANTS ASSOCIATION, INC.,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: WASHINGTON, *Chief Judge*; BLACKBURNE-RIGSBY, *Associate Judge*; and BELSON, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's grant of summary judgment is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: September 22, 2016.

Opinion by Senior Judge James A. Belson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED 9/22/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 15-CV-609

PARCEL ONE PHASE ONE ASSOCIATES L.L.P., APPELLANT,

V.

MUSEUM SQUARE TENANTS ASSOCIATION, INC., APPELLEE.

Appeal from the Superior
Court of the District of Columbia
(CAR-6869-14)

(Hon. Stuart G. Nash, Trial Judge)

(Argued February 18, 2016                    Decided September 22, 2016)

*Richard W. Luchs*, with whom *William C. Casano* was on the brief, for appellant.

*Matthew A. Eisenstein*, with whom *Blake A. Biles* and *Paige Sharpe*, Arnold & Porter LLP; *Julie H. Becker*, Legal Aid Society of the District of Columbia; and *Grishma Pradhan* and *Zenobia Lai*, Asian Pacific American Legal Resource Center, were on the brief, for appellee.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief for the District of Columbia as *amicus curiae* in support of appellee.

Before WASHINGTON, *Chief Judge*, and BLACKBURNE-RIGSBY, *Associate Judge*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*:  Parcel One Phase One Associates, L.L.P. ("Parcel One") appeals the trial court's grant of summary judgment in favor of the plaintiff/ appellee Museum Square Tenants Association, Inc. ("the Association").  Parcel One argues the trial court erred in its determination that (1) the Association had standing under the Tenant Opportunity to Purchase Act ("TOPA") to bring suit challenging Parcel One's offer of sale, *see* D.C. Code §§ 42-3404.01, -3404.11 (1) (2012 Repl.), and (2) its offer of sale to the Association was not bona fide under TOPA, *see* D.C. Code § 42-3404.02 (2012 Repl.).  We affirm the trial court's grant of summary judgment as we conclude that the Association had standing to sue under TOPA and that Parcel One's offer of sale to the Association was not "bona fide" as required under TOPA.

## I.

Museum Square is an apartment building located at 401 K Street, N.W., in Washington, D.C. (the "401 K Street Property").  It contains over 300 residential rental units.[1]  The owner of the building, Parcel One, seeks to demolish the building and build a mix of apartments, condominiums, and commercial space.

---

[1]  The Association's brief asserts that all of the tenants qualify for housing subsidies such as Section 8 housing vouchers, most of the tenants are elderly, and "more than seventy percent are Chinese immigrants."

Parcel One offered to sell the complex to the tenants for $250 million, "as is," cash payment, with a five percent down payment, and balance due at closing. Parcel One arrived at that offer price after an in-house development team analyzed its construction plans and determined that it would yield 450 apartments and 350 condominiums with a net future value of $250 million *after* subtracting construction and development costs. After the offer was made, an independent appraisal company, CBRE, commissioned by Parcel One, appraised the plan and placed the future value of the property at $3 million higher than the offer; this was the only appraisal commissioned by either party.

After receiving Parcel One's offer, the tenants formed Museum Square Tenants Association, Inc., under D.C. Code § 42-3404.11, to deal with the offer. The Association brought an action in Superior Court asserting that the offer extended by Parcel One was not a bona fide offer as it did not "reflect a rational, fair, and objective value of the [p]roperty." The Association sought a declaratory judgment that the offer was not bona fide and an injunction to prevent Parcel One from requiring residents to vacate involuntarily. In its answer, Parcel One countered that the Association did not adhere to the formation requirements of D.C. Code § 42-3404.11, and consequently lacked standing to bring a suit, and that

the $250 million offer of sale was a bona fide offer which met the requirements of TOPA.

The Association subsequently filed a motion for summary judgment. As to standing, the trial judge ruled that the Association had standing and that any error in draftsmanship or formation of the Association did not affect its standing. As to whether Parcel One provided a bona fide offer of sale, there was considerable discussion by the parties and the trial judge at oral argument and in the motions regarding the proper interpretation of *1618 Twenty-First St. Tenants' Ass'n v. Phillips Collection*, 829 A.2d 201 (D.C. 2003) [hereinafter *Phillips*].

Parcel One argued that *Phillips* held that market value or appraised value were not dispositive as to whether an offer was bona fide, but that TOPA required only a good faith, honest offer. In the alternative, Parcel One argued that whether the offer was bona fide was a material issue of fact which "defeat[]s [the Association's] motion for summary judgment." The Association argued that as a matter of law Parcel One's offer of sale was not a bona fide offer, and that *Phillips* was a case in which the property had a unique value to the owner that justified a deviation from the market value, and consequently *Phillips* — as the trial judge later put it — "carve[d] out an exception to the general rule."

In his written order granting summary judgment, the trial judge agreed with the Association, stating it would be "impossible for this [c]ourt to imagine any criteria for ascertaining whether an offer has 'some reasonable basis,' other than by comparing the offer to the market value of the property." According to the trial judge, unless the property has "special circumstances," the "default position" for determining a bona fide offer is based on current market value. Because Parcel One's offer was based on the future value of the property after construction[2] and because the property did not have a unique value to the owner, the trial judge determined that Parcel One was unable to seek refuge in the "exception" in *Phillips*. Moreover, the trial judge observed that "even if all the assumptions included in that [future] valuation are deemed accurate and reasonable, the valuation fails to discount the resulting figure to a present market value." The trial judge found "that no reasonable fact finder would be able to return a verdict on behalf of [Parcel One]," and therefore, granted summary judgment for the Association. This timely appeal followed.

---

[2] The trial judge stated that an appraisal methodology based on the post-construction value "at a point in time several years in the future" was "indisputably *not* an accurate measure of the property's current market value." In his view, this methodology was flawed, and thus he rejected Parcel One's argument that market value was not the "sole standard" for evaluating a bona fide offer.

## II.

## Standard of Review

Whether summary judgment was properly granted is a question of law that we review *de novo*. *Allman v. Snyder*, 888 A.2d 1161, 1165 (D.C. 2005). "In reviewing the propriety of a summary judgment, this court must determine whether the substantive law was correctly applied." *Kibunja v. Alturas, L.L.C.*, 856 A.2d 1120, 1129 (D.C. 2004). We view the facts in the light most favorable to the non-moving party to determine "(1) whether any genuine issue of material fact exists, and (2) whether appellees are entitled to judgment as a matter of law." *West End Tenants Ass'n v. George Wash. Univ.*, 640 A.2d 718, 725 (D.C. 1994); *accord* Super. Ct. Civ. R. 56 (c). "[S]ummary judgment should be granted sparingly in cases involving motive or intent," *Green v. Gibson*, 613 A.2d 361, 364 (D.C. 1992), and if this court has "[a]ny doubt as to whether . . . a genuine issue of material fact has been raised," we will hold that summary judgment was improper, *Virginia Acad. of Clinical Psychologists v. Group Hosp. & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005) (quoting *Weakly v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C. 2005)) (brackets omitted). However, the party opposing the motion must proffer "enough evidence to make out a prima facie case in support of [its] position." *Id.* (quoting *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1281–82

(D.C. 2002)) (alteration in original).  Thus, while the moving party has the burden of demonstrating that there are no material facts in dispute, the non-moving party may not defeat a motion for summary judgment by merely asserting conclusory allegations.  *Joeckel*, *supra*, 793 A.2d at 1281.

## A.  The Association Has Standing

"Standing is a question of law that is reviewed *de novo*; the underlying factual determinations are reviewed for clear error."  *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 729 (D.C. 2011).  "When a lawsuit reaches the summary judgment stage, the mere allegations of the pleadings become insufficient. . . . [S]tanding must be shown through 'specific facts' set forth by 'affidavit or other evidence to survive.'"  *Grayson v. AT&T Corp.*, 15 A.3d 219, 246 (D.C. 2011) (en banc) (internal quotation marks and citation omitted).  A tenant organization has the "burden to show that it has standing to bring its suit."  *Richman Towers Tenants' Ass'n v. Richman Towers LLC*, 17 A.3d 590, 597 (D.C. 2011) [hereinafter *Richman Towers*].  For the reasons explained below, we conclude that appellee has standing.

## 1.  Legal Principles

For purposes of TOPA, a "tenant organization" is defined as "an organization that represents at least a majority of the heads of household in the housing accommodation excluding those households in which no member has resided in the housing accommodation for at least 90 days and those households in which any member has been an employee of the owner during the preceding 120 days." D.C. Code § 42-3401.03 (18). For a tenant association to show it has standing to bring suit under TOPA, it must show that it "qualifies [as a tenant organization] under th[is] . . . definition." *Richman Towers*, *supra*, 17 A.3d at 597.[3]

In *Richman Towers*, we concluded that two tenant associations qualified as "tenant organizations" and therefore had standing to sue under D.C. Code §§ 42-3404.02 (a) & -3405.03 because they adduced sufficient evidence to prove that they "represented at least half of the qualifying heads of household at the alleged time of sale." *Id.* at 598-99. We concluded, in contrast, that the remaining tenant associations did not qualify as "tenant organizations" with standing to sue because they failed to "provide[] evidence that [they] represented at least half of the

---

[3] Once a tenant association is formed, individual tenants will then lack standing to sue. *Id.* at 600 (citing *West End Tenants Ass'n*, *supra*, 640 A.2d at 721, n.1).

qualifying heads of household." *Id.* at 599. It appears, then, that under *Richman Towers*, all the Association had to do to demonstrate it had standing to sue was provide evidence that it represented at least half of the qualifying heads of household living at the 401 K Street Property.

Parcel One contends, however, that the Association was required to do more. In Parcel One's view, to obtain standing to sue, the Association had to (1) "bargain in good faith" with Parcel One under D.C. Code § 42-3404.05 (a) and (2) satisfy the requirements found in D.C. Code § 42-3404.11 (1). One of those requirements, according to Parcel One, is that the Association *must* have adopted bylaws prior to filing an application for registration of the tenant association with the Mayor. *See* D.C. Code § 42-3404.11 (1); *see also* D.C. Code § 29-402.06 (a). Yet, so Parcel One claims, it is undisputed that the Association never even attempted to bargain with Parcel One and there is at least a material dispute of fact as to whether the Association properly adopted bylaws pursuant to the alleged statutory requirement. Consequently, Parcel One contends that the trial court should not have granted summary judgment to the Association because the Association's standing to sue is in serious doubt.

As for Parcel One's argument concerning bargaining in good faith, we are sympathetic to the idea that the parties should negotiate before bringing suit. We have said that "TOPA envisions that an offer of sale will be followed, when there is tenant interest, by 'bargain[ing] in good faith' and a 'reasonable period to negotiate a contract of sale.'" *1836 S St. Tenants Ass'n v. Estate of B. Battle*, 965 A.2d 832, 840 (D.C. 2009) [hereinafter *S St. Tenants*]. However, tenants are granted by TOPA the unconditional right to bring "a civil action in law or equity" in order to "seek enforcement of any right or provision" under TOPA, D.C. Code § 42-3405.03, and under TOPA, tenants have "the right to receive a bona fide offer affording [the tenant(s)] a genuine 'opportunity to purchase' . . . whenever the owner proposes to sell the property, demolish the premises, or convert the property to non-rental use — irrespective of the existence of a third-party contract," *S St. Tenants*, 965 A.2d at 840; *see also* D.C. Code § 42-3404.02 (a). We thus reject Parcel One's argument that the Association was required to negotiate with Parcel One in order to obtain standing to sue to enforce the tenants' right to receive a bona fide offer of sale under D.C. Code § 42-3405.03.

In so concluding, we do not mean to discourage parties from negotiating or the trial court from strongly encouraging negotiation between the parties. We have a "longstanding policy of encouraging settlements." *Convit v. Wilson*, 980 A.2d

1104, 1122 (D.C. 2009) (internal quotation marks omitted) (quoting *Paul v. Bier*, 758 A.2d 40, 48 (D.C. 2000)).  Indeed, in TOPA cases as well as other appropriate cases, the trial court may assign the case to non-binding arbitration to help motivate the parties to bridge their differences.  *See* Super. Ct. Civ. Arbitration Rule I.  When the trial court deems it advisable, it can defer action on motions for summary judgment for a reasonable time until the parties have attempted to negotiate a settlement.

As for Parcel One's argument that the Association was required by D.C. Code § 42-3404.11 (1) to adopt bylaws, we reject it for the simple reason that D.C. Code § 42-3404.11 (1) by its terms applies only when tenants seek "to make a contract of sale with an owner."  Ability to contract is not the same as standing to sue; under TOPA, the former is governed by D.C. Code § 42-3404.11 (1), while the latter is governed by D.C. Code § 42-3401.03 (18), *see Richman Towers*, *supra*, 17 A.3d at 597-99.[4]  Here, the tenants (and the Association) did not seek to

---

[4]  This distinction is reinforced by the fact that D.C. Code § 42-3404.11 (1) provides that, "[i]n order to make a contract of sale with an owner, the tenants shall," *inter alia*, "deliver an application for registration to the Mayor and the owner by hand or by certified mail within 45 days of receipt of a *valid offer* or the Mayor's receipt of a copy of a *valid offer*, whichever is later" (emphasis added).  Whether the tenants received a valid offer of sale — one that could trigger the 45-day countdown in D.C. Code § 42-3404.11 (1) — is precisely the question the Association has asked the courts to decide in this suit.

make a contract with Parcel One; they sought only to enforce their right to receive a bona fide offer of sale under TOPA. We, therefore, conclude, per *Richman Towers*, that the Association was required only to "provide[] evidence that it represented at least half of the qualifying heads of household [of the 401 K Street Property]," 17 A.3d at 599, to show that it had standing to sue.

## 2. Analysis

A review of the record reveals the following relevant facts. In its motion for summary judgment, the Association stated that, "[i]n order to exercise their statutory rights, and in compliance with TOPA, the [401 K Street Property] tenants formed Museum Square Tenants Association, Inc.," citing its attached "Statement of Material Facts Not in Dispute."[5] The Association also attached to its motion several exhibits, one of which included a series of documents labeled "Membership List" containing hundreds of signatures from individuals who "attest[ed] and affirm[ed]" that they were 401 K Street Property tenants who were "eligible to be . . . member[s] of Museum Square Tenants Association, Inc." The

---

[5] In the attached Statement, the Association stated that, following Parcel One's delivery of the offer of sale to the tenants, "[t]he tenants formed Museum Square Tenants Association, Inc."

page immediately following the Membership List states that the Association "represents 209 out of 291 eligible occupied units." Parcel One did not dispute the Association's statement, nor did it dispute or introduce evidence contradicting the validity of the Membership List or the statement following the list.

We are satisfied that the Association established its standing to sue. The Association's Membership List contains signatures from over 200 units of the 401 K Street Property, far more than the simple majority of units required under *Richman Towers*. This evidence, even viewed in the light most favorable to Parcel One, is sufficient to confirm the Association's statement that, "in compliance with TOPA, the [401 K Street Property] tenants formed Museum Square Tenants Association, Inc." and the statement following the list that the Association "represents 209 out of 291 eligible occupied units." Consequently, we hold that the Association had standing to sue under D.C. Code § 42-3405.03. *See Richman Towers*, *supra*, 17 A.3d at 597; *see also Grayson*, *supra*, 15 A.3d at 246.

### B.    Summary Judgment Was Appropriate

Under TOPA tenants have "the right to receive a bona fide offer affording [the tenant(s)] a genuine 'opportunity to purchase' . . . whenever the owner

proposes to sell the property, demolish the premises, or convert the property to non-rental use," *S St. Tenants*, 965 A.2d at 840; *see also* D.C. Code § 42-3404.02 (a). Most often, a third-party contract provides the benchmark for determining whether an offer is bona fide — that is to say, if the terms offered to the tenant are "roughly equal" to the terms of the third-party contract, there is a bona fide offer. *See Phillips*, *supra*, 829 A.2d at 204. *Phillips* was the first case in which we faced the challenge of determining whether an offer of sale made to tenants under TOPA was "bona fide" in the absence of a benchmark third-party contract. *Id.* at 205. As we observed in Part I, *supra*, our decision in *Phillips* lies at the heart of the trial court's grant of summary judgment here, and it thus warrants a close look before we move on to our analysis of the propriety of summary judgment in this case.

## 1. *Phillips*

### (a)

The facts in *Phillips* were straightforward. Phillips was a non-profit corporation that functioned as a museum. *Id.* at 202. It purchased an adjacent apartment building for $1,400,000, and the tenants declined to exercise their TOPA rights at the time of that transaction. *Id.* Approximately three years later, Phillips

obtained the necessary zoning permits to demolish the apartment building and build an art center in its place. *Id.* The tenants, however, refused to vacate voluntarily. *Id.* Phillips then offered to sell the building to the tenants for $7,800,000 based on what it thought, after careful consideration, it would have to pay for a suitable piece of nearby real estate. *Id.* at 203, 207-08. The tenants rejected the offer on the basis that they did not think the offer was bona fide. *Id.* at 203. Phillips then sought — and received — a declaratory judgment that the offer was, in fact, bona fide. *Id.* The tenants appealed, claiming that the trial court erred in concluding that Phillips's offer was bona fide. *Id.*

In reviewing the trial court's judgment in *Phillips*, this court set forth a comprehensive review of TOPA, recognizing that its "overarching purpose is to protect tenant rights," and then turned to the interpretation of "bona fide." *See generally id.* at 203-04. In looking at the requirements for a bona fide offer when there *is* a third-party contract, we observed that market value, appraisal value, or the "value of the building as rental housing" are not requisite benchmarks for a bona fide offer. *Id.* at 206. We said that the *only* requirement for a valid, bona fide offer when there is a third-party contract is that "the offer [to the tenants] be based on what a third party is willing to pay." *Id.*; *see also* D.C. Code § 42-3401.03 (2)(A) ("For a price and other materials terms that are at least as favorable . . . .").

Because there is no requirement when there is a third-party contract that the offer be based upon current market value, this court determined that TOPA called for the same outcome when there is no third-party contract. *See Phillips*, *supra*, 829 A.2d at 206. We held that instead a "'bona fide offer of sale' simply requires an objectively good faith, honest offer of sale," noting that the Council could have defined "bona fide," but did not, and that "nothing in the legislative history . . . supports the contention that 'bona fide offer of sale' requires anything more than objective good faith."[6] *Id.*

Relying on this definition of "bona fide offer of sale," we concluded that Phillips's offer of sale was bona fide because it was "based upon an objectively

---

[6] During the pendency of this trial litigation and appeal, the D.C. Council formally defined bona fide offer in the absence of a third-party contract in the TOPA Bona Fide Offer of Sale Clarification Amendment Act of 2015, 53 D.C. Reg. 16251 (2015). The Act provides that a "[b]ona fide offer of sale" in the absence of a third-party contract is one that has "a price and other material terms comparable to that at which a willing seller and a willing buyer would sell and purchase the housing accommodation, or the appraised value." *Id.* § 2 (a)(2), 53 D.C. Reg. at 16251. The Act defines "[a]ppraised value" as "the value of a housing accommodation as of the date of the appraisal, based on an objective, independent property valuation, performed according to professional appraisal industry standards," *id.*, and the appraised value must be "based on rights an owner has as a matter-of-right as of the date of the offer, including any existing right . . . to convert the property," *id.* § 2 (b)(2), 53 D.C. Reg. at 16252. Subject to these restrictions, the appraised value may take into account the "highest and best use of the property." *Id.* The Act became effective on February 26, 2016. *See* 63 D.C. Reg. 2321 (2016). The trial court did not rely on the Act in its ruling, and so we will not consider the Act here.

fair analysis of the value of the property to Phillips based on its intended use" and it "was made after Phillips carefully considered all available options and was based on concrete facts." *Id.* at 207-08. In so holding, we stated, "Given the unique circumstances that exist in this case, the trial judge did not err in finding that Phillips's offer was made in good faith and was thus a 'bona fide offer of sale' under the statute," *id.* at 208, language that figures in the parties' dispute over the proper application of *Phillips*.

**(b)**

In this case, the trial court was presented with a situation analogous to that in *Phillips*: Parcel One made an offer of sale to the 401 K Street Property tenants in the absence of a third-party contract. Each party, recognizing the relevance of *Phillips*, argued respectively for an interpretation of *Phillips* that supported its position. The trial court relied on our "unique circumstances" language to conclude that *Phillips* represented a narrow exception to the general rule that a

"bona fide offer of sale" must be based on market value, reasoning that "the default position, in the absence of proof of . . . special circumstances [like those present in *Phillips*], is that market value is the essential touchstone in assessing whether an owner has made a bona fide offer." This narrow interpretation of *Phillips* figured in the trial court's decision to grant the Association summary judgment, as it concluded that Parcel One's offer of sale was not bona fide because it was based on appraisals that undisputedly did not reflect the 401 K Street Property's present value, but instead reflected a future value of a building that had not been discounted to present value.

**(c)**

On appeal, the parties continue to advocate differing interpretations of *Phillips*. Parcel One contends that *Phillips* sets forth a general rule applicable in all TOPA cases involving an offer of sale made in the absence of a third-party contract — namely, that a "'bona fide offer of sale' simply requires an objectively good faith, honest offer of sale." 829 A.2d at 206. Parcel One further contends that the trial court erred in characterizing *Phillips* as an "exception to the general

rule" (the general rule being based upon a comparison of the offer of sale to current market value) that applies only when there are "special circumstances." The Association, supported by the District of Columbia as *amicus curiae*, argues in favor of the trial court's narrow interpretation of *Phillips* as a "special circumstances" exception to the general rule that for an offer to be bona fide, it must be based on current market value.

The proper interpretation of *Phillips* is a question of law we review *de novo*. *See Technical Land, Inc. v. Firemen's Ins. Co.*, 756 A.2d 439, 443 (D.C. 2000). After reviewing our decision in *Phillips*, we are not persuaded by the position taken by the Association and the *amicus*. In *Phillips*, our discussion of what constitutes a "bona fide offer of sale" was not limited to offers based on current market value unless there are special circumstances warranting departure from current market value. Indeed, we explicitly supported our holding that the Council adopted the common law definition of "bona fide" with the observation that "[t]he overall structure of the Act supports the conclusion that the offer does not have to reflect appraised value or market value to be 'bona fide.'" Accordingly, we reaffirm our holding in *Phillips* that a "'bona fide offer of sale' simply requires an objectively good faith, honest offer of sale," 829 A.2d at 206, and we further hold for clarification that an offer of sale need not be based on current market value to

be bona fide. So long as the offer is "based upon an objectively fair analysis of the value of the property to [the owner] based on its intended use," *id.* at 207, the offer is bona fide even though not based on current market value.

## 2. Analysis

The parties agree that on June 6, 2014, Parcel One delivered to the tenants an offer of sale for the 401 K Street Property with an asking price of $250 million. The appropriate question under *Phillips*, therefore, is whether Parcel One had an objective good faith basis to ask the tenants for $250 million in 2014 in exchange for the property "as is." If there is at least a dispute of material fact that leaves open the possibility that Parcel One had an objective good faith basis for its offer of sale, summary judgment was inappropriate. In conducting our inquiry, we recognize that this case involves Parcel One's good faith, "an issue of mental state somewhat akin to disputes in which intent is at issue," and therefore that this case is one in which "summary judgment should be granted sparingly . . . ." *Green*, *supra*, 613 A.2d at 364. Nevertheless, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the Association] is

entitled to a judgment as a matter of law," Super. Ct. Civ. R. 56 (c), we will affirm the grant of summary judgment.

The facts relevant to the question presented are as follows. In 2014, Parcel One undertook an in-house appraisal of the 401 K Street Property based on Parcel One's plan to develop the property into a mixed-use building. Thereafter, Parcel One paid CBRE, Inc., as a third-party appraiser to do an independent appraisal of the property, again based on its development plan. Parcel One had determined through its in-house appraisal that the value of the 401 K Street Property, once developed, would be $250 million; the CBRE report appraised the development value at $253 million. Parcel One and the Association agree that both of these numbers represent the value of the property years in the future. The CBRE report recognizes this fact, projecting that Parcel One would realize the full $253 million value of the proposed development in two stages, the first in February of 2019 and the second in October of 2021. In an affidavit attached to the Association's motion for summary judgment, the Association's expert, Mr. Harps, stated, "A key concept in real estate is that dollars received in the future are worth less than dollars received today. In other words, *the right to receive a dollar in the future is not worth a dollar today*" (emphasis added). After analyzing the CBRE report, Mr. Harps estimated that the present value of the 401 K Street Property if it is

developed as described in the CBRE report was significantly less than $250 million in 2014 — more than 70% less than the CBRE estimate of the future value of the property or, specifically, $68 million as of September 23, 2014. Parcel One provided no evidence to counter Mr. Harps's sworn statements about the present value of the property when developed, including, significantly, his statement that the right to receive a dollar in the future is not worth a dollar today. Parcel One even admitted in its opposition to the Association's motion for summary judgment that its offer of sale was based on the in-house appraisal and CBRE report and that "[t]he CBRE appraisal was not intended to capture, and it expressly stated that it did not capture, 'as is' valuation." Thus, this case is materially different from *Phillips*, in which the offer of sale reflected the owner's present need to use real property near the location of its art gallery.

It is obvious that $250 million in 2014 was worth $250 million in 2014. However, Mr. Harps's affidavit established that what would be by 2021 the newly-developed 401 K Street Property was worth substantially less than $250 million in 2014. Parcel One failed to adduce any contradictory evidence to establish that the property, as developed for Parcel One's intended use, was worth any figure approaching $250 million in 2014 — thus failing to validate its offer to sell the property to the tenants for that figure in 2014. Viewing the undisputed facts in the

light most favorable to Parcel One leaves us with the firm conviction that Parcel One's $250 million offer of sale on June 6, 2014, was not based on an objectively good faith assessment of the value of the property at that time, even taking into account Parcel One's intended use.[7] It is plain, of course, that the offer of sale was not based on the value of the building as it stood, either. We need not accept Mr. Harps's specific estimate that the present value of the property in 2014, assuming the timely completion of the apartments and condominiums that Parcel One planned to build, was only $68 million to be confident that its value was far less than the $250 million offer of sale.

No reasonable third party purchaser, apprised of Parcel One's in-house appraisal or the CBRE report, would have been willing in 2014 to pay the 2019-2021 value of the property of $250 million. Therefore we hold that, as a matter of law, Parcel One's offer of sale was not bona fide under TOPA and *Phillips*. The trial court did not err in granting the Association summary judgment.

---

[7] This is not to say that a projected future valuation based on a landowner's intended use of property cannot play *any* role in formulating a bona fide offer. Even the Association's expert relied on Parcel One's future projected valuation (the CBRE report) to estimate the value in 2014 of the to-be-developed 401 K Street Property. However, based on the undisputed evidence presented in this case, Parcel One's reliance on nothing other than its future projected valuation in formulating its offer of sale undermined its claim that the offer was bona fide.

\*\*\*\*\*\*

For the foregoing reasons, based upon TOPA and our opinion in *Phillips*, we affirm the trial court's grant of summary judgment.

*So ordered.*