*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 19-CV-0529 & 19-CV-0691

RFB PROPERTIES II, LLC, APPELLANT

V.

DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOAN, INC. MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-QA8, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-99-18)

(Hon. Florence Y. Pan, Trial Judge)

(Argued February 4, 2021                    Decided March 25, 2021)

*Peggy A. Marquardt*, with whom *Michael Brand* was on the brief, for appellant.

*William T. Mandia*, with whom *Walter J. Buzzetta* and *Adam M. Kaplan* were on the brief, for appellee.

Before GLICKMAN, BECKWITH, and EASTERLY, *Associate Judges*.

EASTERLY, *Associate Judge*:   In this case, we are confronted with the

unresolved question whether consolidation of two or more cases under Superior

Court Civil Rule 42 precludes immediate appeal of a final order in one of the constituent cases. We hold, consistent with the Supreme Court's interpretation of Federal Civil Rule 42, that it does not.

In addition, we continue to build on our case law examining the repercussions of the enactment of D.C. Code § 42-1903.13 (2020 Repl.), which gives condominium associations super-priority liens over first mortgage lienholders for up to six months of unpaid condominium assessments and authorizes the associations to recover the unpaid fees by foreclosing on the condominium unit in default. We recently explained in *4700 Conn 305 Trust v. Capital One, N.A.*, 193 A.3d 762, 764 (D.C. 2018), that even when an association seeks to recover more than the six months of fees, super-priority status under the statute is not lost and the foreclosure sale will extinguish any liens on the property, including a first mortgage or first deed of trust, that foreclosure sale proceeds do not pay off. But we also reaffirmed that the first mortgage lienholder could challenge the purchase price at a condominium association lien foreclosure sale as unconscionably low. *Id.* at 766. *4700 Conn 305 Trust* did not address at what point in time unconscionability of the purchase price should be assessed—at the time of the challenged sale or at the time of the litigation challenging the sale. We now clarify that, consistent with our case law assessing unconscionability of contracts in other contexts, treatises, the Restatement of

Contracts, and case law from other jurisdictions, the inadequacy of the purchase price of a condominium unit sold at foreclosure pursuant to D.C. Code § 42-1903.13 must be assessed based on circumstances as they existed when the foreclosure sale occurred.

## I.      Facts and Procedural History[1]

This case began with the sale of a condominium unit in 2005 for $541,900. The 2005 buyer borrowed $476,000 to finance his purchase, and secured the promissory note with a deed of trust on the property. After the 2005 buyer fell behind on the condominium association's monthly assessments, the association obtained and recorded a lien against the property for $36,465 in unpaid fees. The association then proceeded to foreclose against the property to recoup the arrearage, which had grown to $72,658.24. The association recorded notice of the foreclosure sale in 2015, and in its advertisement for the sale, it stated that the property was being "sold subject to any other superior liens . . . if any, the further particulars of which may be announced at the time of sale." RFB Properties II, LLC ("RFB II")

---

[1] The trial court issued its findings of fact and conclusions of law orally. In setting forth the relevant undisputed facts, we rely on the transcript of the trial court's ruling and other record documents submitted to this court by the parties in their Joint Appendix.

purchased the property at the condominium association's foreclosure sale for a winning bid of $53,000 in September 2015. The association conveyed title by deed to RFB II. RFB II did not record the deed.

Meanwhile, the 2005 buyer had also defaulted on his mortgage, which had an outstanding balance of $505,115.31 as of March 1, 2016. In early 2016, the bank from whom the 2005 buyer obtained his mortgage assigned the first deed of trust securing the loan to Deutsche Bank National Trust Company ("Deutsche Bank") "for good and valuable consideration." Later that year, Deutsche Bank initiated foreclosure proceedings. At the deed of trust foreclosure sale in 2017, Deutsche Bank itself purchased the property for $505,000. Deutsche Bank recorded its deed to the property and then filed suit for possession in D.C. Superior Court against the 2005 buyer and current occupants.

RFB II challenged Deutsche Bank's possessory rights to the property by filing an action to quiet title in 2018. Specifically, RFB II sought a determination by the court that (1) the condominium association's 2015 foreclosure sale extinguished the first deed of trust assigned to Deutsche Bank; (2) Deutsche Bank's purchase of the property at the 2017 deed of trust foreclosure sale was a legal nullity; and thus (3) RFB II held free and clear title to the property. At RFB II's request, the Superior

Court consolidated RFB II's suit for a declaratory judgment with Deutsche Bank's action for possession. *See* Super. Ct. Civ. R. 42(a).

Both parties subsequently filed for summary judgment in RFB II's action to quiet title. In its motion, Deutsche Bank made multiple arguments attacking not only RFB II's ability to challenge Deutsche Bank's recorded ownership of the property but also the legitimacy of RFB II's purchase of the property at the 2015 foreclosure sale. To the latter point, Deutsche Bank argued that RFB II's purchase was invalid because it had paid an unconscionably low price for the property. Questions arose about the fair market value of the property at the time of the 2015 foreclosure sale and whether other measurements (such as the tax assessed value) could be relied upon instead. Ultimately the trial court focused on one issue: at what point in time unconscionability of the purchase price should be assessed—in 2015, at the time of the purchase, or in 2018–2019, at the time the summary judgment motions were being litigated?

RFB II argued unconscionability of the 2015 purchase should be assessed based on circumstances as they stood in 2015. At that time this court had yet to issue its opinion in *4700 Conn 305 Trust*, which made clear that a foreclosure sale on a condominium lien in excess of the amount given superior priority status under D.C.

Code § 42-1903.13 would nonetheless extinguish all other possessory interests in the property that are not paid off by the foreclosure sale proceeds. 193 A.3d at 764. Accordingly, RFB II argued, it had purchased the property subject to the risk that it was still encumbered by a substantial mortgage, and thus its $53,000 purchase price could not be deemed unconscionable. Deutsche Bank countered that unconscionability of RFB II's 2015 purchase should be assessed based on circumstances at the time of the summary judgment litigation. It had become clear, in the wake of *4700 Conn 305 Trust,* that RFB II had purchased the property unencumbered for $53,000, approximately a tenth of its asserted value, and the bank argued this price was unconscionable under a twenty percent benchmark set out in the Restatement (Third) of Property. Neither party tethered their timing arguments to any law; instead, they represented to the trial court that there was no law on this issue.

In its ruling, the trial court acknowledged that "there was an assumption" at the time of the 2015 foreclosure sale that a bank's first deed of trust would survive a foreclosure to recover arrearages in excess of a condominium association's six-month super-priority lien. The court further found that RFB II "likely" purchased the property for the modest sum of $53,000 based on that assumption, and that this price "would not have been unconscionable" if RFB II had indeed taken the property

subject to the first deed of trust. But the trial court determined the correct mode of analysis was to assess the purchase price "under the present circumstances." Viewed through this lens, the trial court agreed with Deutsche Bank that the purchase price of $53,000 for the unencumbered condominium unit was unconscionably low as compared to the market value of the property at the time of sale, which the court "valued at at least 475 thousand dollars and probably more like 650 thousand dollars." Thus the trial court granted Deutsche Bank's motion for summary judgment on RFB II's action to quiet title.[2]

## II.    Whether the Trial Court's Order Is Appealable

This appeal comes to us from one half of a consolidated case in Superior Court. RFB II seeks to challenge the trial court's order granting summary judgment to Deutsche Bank on RFB II's action to quiet title, but the bank's action for possession is still pending. Generally, our court only has jurisdiction to review "final orders and judgments of the Superior Court," D.C. Code § 11–721(a)(1) (2012

---

[2] The court also stated that it was "invalidat[ing] the sale" of the property to RFB II. It is unclear whether the court had the authority to take this step, given that the other party to the sale, the condominium association, was not party to the litigation. Because we conclude that the bank was not entitled to summary judgment on the ground of unconscionability, we need not address this issue.

Repl.), which are those that "dispose[] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered," *Rolinski v. Lewis*, 828 A.2d 739, 746 (D.C. 2003) (en banc) (internal quotation marks omitted). Accordingly, we consider whether we have the authority to review the trial court's order at this stage of the litigation.[3]

We have no precedent addressing whether we have jurisdiction over an appeal from an order that disposes of one action filed separately but later consolidated with another case under Superior Court Civil Rule 42. But because the Superior Court's Civil Rule 42 mirrors Federal Civil Rule 42, we may look to federal case law for guidance. *See Washington Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 580 n.18 (D.C. 2011) ("We construe our rules in light of the meaning of the federal rules where they are substantially identical . . . ."); *Dist. Cablevision Ltd. P'ship v. McLean Gardens Condo. Unit Owners' Ass'n*, 621 A.2d 815, 818 n.5 (D.C. 1993) ("Super. Ct. Civ. R. 42 is virtually identical to [Fed. R. Civ. Proc. 42].").

---

[3] The parties have not contested our jurisdiction, but we have an independent obligation to confirm it. *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1098 (D.C. 2015).

The Supreme Court recently considered whether consolidation of two cases under Federal Civil Rule 42 precluded immediate appeal from a final order in only one of those cases. *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). Examining the language of Rule 42 and the history of the practice of consolidation under the statutory precursor to Rule 42, the Court held that consolidation under the rule does not automatically cause the "constituent cases" to lose "their separate identities," and thus "a disappointed litigant is free to seek [appellate] review" of a final order in a case consolidated with others under Rule 42. *Id.* (explaining that "a final decision in one [case consolidated with others] is immediately appealable by the losing party" because "[t]hat is . . . the point at which, by definition, a [trial] court disassociates itself from a case" (internal quotation marks omitted)).

Persuaded by this reasoning, we similarly hold that this court retains jurisdiction to review final appealable orders in cases that have been consolidated with others under Superior Court Civil Rule 42. Here, there is no question that when the trial court granted summary judgment for Deutsche Bank in RFB II's quiet title action it issued a final order in that case. We therefore conclude we have jurisdiction to review that order on appeal.

### III. Whether Summary Judgment Was Erroneously Granted

RFB II challenges the trial court's order granting summary judgment to Deutsche Bank on RFB II's quiet title action on the ground that it acquired the property at the condominium association's foreclosure sale for an unconscionably low price. Before we examine the foundation of the trial court's unconscionability ruling, we address RFB II's arguments that Deutsche Bank lacked standing to raise unconscionability, that Deutsche Bank should be estopped from raising this defense to RFB II's claim of title, or that Deutsche Bank waived this defense in the trial court. We address and reject in turn each of these arguments.

### A. Preliminary Issues

RFB II does not argue that Deutsche Bank did not suffer "an injury in fact" that invades a "concrete and particularized" interest and that is "actual or imminent, not conjectural or hypothetical." *Holmes v. District of Columbia Dep't of Hous. & Cmty. Dev.*, 231 A.3d 416, 421 (D.C. 2020) (internal quotation marks omitted) (explaining that these are the minimum requirements of standing). Instead, RFB II asserts that Deutsche Bank lacks standing to raise an unconscionability defense because Deutsche Bank has a claim against the 2005 buyer. Whether a party has standing is a question of law that we review de novo. *Parcel One Phase One Assocs.,*

*L.L.P. v. Museum Square Tenants Ass'n*, 146 A.3d 394, 399 (D.C. 2016). We reject RFB II's challenge to Deutsche Bank's standing.

RFB II's argument that Deutsche Bank lacks standing because it can seek relief elsewhere is a non sequitur. Whether Deutsche Bank—which holds the promissory note on the mortgage and is the beneficiary of the first deed of trust— has a contractual remedy against the 2005 buyer has no bearing on whether it can assert injury by virtue of RFB II's purchase of the property for an unconscionably low price at the condominium association's 2015 foreclosure sale extinguishing the first deed of trust securing the note. *See Chase Plaza Condo. Ass'n v. JPMorgan Chase Bank, N.A.*, 98 A.3d 166, 169–70 (D.C. 2014).

RFB II alternatively argues that Deutsche Bank should be "barred by estoppel" from raising unconscionability as a defense because its predecessor in interest (1) apparently failed to collect the condominium fees and put them in escrow so as to forestall foreclosure to recoup these fees, and (2) failed to purchase the property at the condominium lien foreclosure so as to protect its interest in the property. RFB II cites no law in support of this argument, and we are aware of none. "[A] party raising equitable estoppel must show that he changed his position prejudicially in reasonable reliance on a false representation or concealment of

material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act." *Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871, 880 (D.C. 2018) (internal quotation marks omitted). "[T]he key element of an estoppel is intentionally induced prejudicial reliance." 28 Am. Jur. 2d Estoppel and Waiver § 2 (2021). RFB II has alleged no facts that implicate the doctrine of equitable estoppel. This is not to say that the facts RFB II alleges are irrelevant to its action to quiet title,[4] but they do not provide a foundation for precluding Deutsche Bank from raising unconscionability as a defense.

RFB II also argues that Deutsche Bank waived unconscionability as an affirmative defense by raising it for the first time in a motion for summary judgment. We review the trial court's consideration of Deutsche Bank's affirmative defense for abuse of discretion. *See Ashton Gen. P'ship v. Fed. Data Corp.*, 682 A.2d 629, 634 (D.C. 1996). While a party "responding to a pleading . . . must affirmatively state any avoidance or affirmative defense," Super. Ct. Civ. R. 8(c)(1), a defendant will not be barred from raising a defense in a pre-trial motion if the "plaintiff has ample

---

[4] Certainly, if Deutsche Bank's predecessor in interest knew about RFB II's purchase of the property at the condominium lien foreclosure sale (which should have resulted in the bank receiving any funds in excess of the six-month arrearage recovered by the association, *see* D.C. Code § 42–1903.13(c)(6)), such knowledge might support an argument that the Bank was on inquiry notice of RFB II's unrecorded purchase of the property.

opportunity to respond to [the] defense." *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1134 n.56 (D.C. 2005); *see also Osei-Kuffnor v. Argana*, 618 A.2d 712, 715 (D.C. 1993) (acknowledging this court's "flexible interpretation of Rule 8(c) . . . in the absence of substantial prejudice [to the plaintiff]"). RFB II responded to Deutsche Bank's unconscionability arguments both in its written pleadings— namely its opposition to Deutsche Bank's motion for summary judgment, its supplemental memorandum of law opposing Deutsche Bank's motion, and its reply to Deutsche Bank's opposition to RFB II's motion for summary judgment—and at two separate hearings. Further, although RFB II complains it was unable to retain an expert or conduct more discovery, RFB II never sought leave to do either in the seven months between Deutsche Bank's motion for summary judgment and the trial court's order granting that motion. Thus we are unconvinced by RFB II's assertion that it was "severely prejudiced" by Deutsche Bank's failure to plead unconscionability as a defense in its Answer.

## B. Unconscionability

Having rejected RFB II's arguments that unconscionability should never have been considered by the trial court, we turn to the trial court's unconscionability ruling. "Summary judgment is only appropriate where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law." *Chase Plaza Condo. Ass'n*, 98 A.3d at 172 (internal quotation marks omitted). Our review of orders granting summary judgment is de novo. *Id.*

A claim that real property was purchased at an unconscionably low price at a foreclosure sale is a plea for equitable relief. *See Holman v. Ryon*, 56 F.2d 307, 310 (D.C. Cir. 1932). To prevail on such a claim, the challenger to the sale must prove that the sale price "was so grossly inadequate as to shock the conscience . . . and raise a presumption of fraud." *Nat'l Life Ins. Co. v. Silverman*, 454 F.2d 899, 916 (D.C. Cir. 1971) (internal quotation marks omitted), *on reconsideration en banc*, 1971 WL 224349 (D.C. Cir. Dec. 9, 1971). There is no "hard and fast rule" as to what sale price, relative to the fair market value of the property, constitutes an unconscionable one; each case is judged according to its own facts. *Lewis v. Jordan Inv., Inc.*, 725 A.2d 495, 500 (D.C. 1999) (internal quotation marks omitted); *see also* Restatement (Third) of Property: Mortgages § 8.3 cmt. b (Am. Law Inst. 1997) (explaining gross inadequacy is assessed by comparing the sale price to the fair market value of the real estate).

The trial court concluded that RFB II acquired the property at the condominium association's foreclosure sale for an unconscionably low price, based

not on the circumstances as they existed when RFB II purchased the property, but based on the circumstances existing at the time of the summary judgment litigation. Specifically, the court considered the fact that an intervening change in the law made clear that the property, which it presumed was worth approximately half a million dollars, had been purchased, unencumbered, for only $53,000. This was error.

It has long been recognized in this jurisdiction that the determination of whether a contract is unconscionable is made by considering the circumstances as they existed at the time the contract was entered into. The District of Columbia Circuit Court of Appeals recognized this principle in *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965) ("In determining reasonableness or fairness [of a contract], the primary concern must be with the terms of the contract considered in light of circumstances existing when the contract was made."). This court reaffirmed this principle in *Patterson v. Walker-Thomas Furniture Co.*, 277 A.2d 111, 113 (D.C. 1971) (explaining unconscionability is analyzed by considering "the circumstances existing when the contract was made"), and we have not abandoned it. *See, e.g., Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n*, 979 A.2d 1176, 1186 (D.C. 2009) ("Whether a contract term is unconscionable is determined as of the time the contract is made."). Our view aligns with treatises, *see, e.g.*, 8 Williston on Contracts § 18:12 (4th ed. 2020) ("The determination of

whether a given clause or contract is in fact unconscionable is to be made at the time of its making rather than at some subsequent point in time . . . ." (footnote omitted)), the Restatement of Contracts, *see* Restatement (Second) of Contracts § 208 (Am. Law Inst. 1981) ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."), and the law of other jurisdictions, *see, e.g.*, *Gladding v. Langrall, Muir & Noppinger,* 401 A.2d 662, 664 (Md. 1979) (whether a contract is unconscionable "will not be judged by hindsight but by the situation as it existed at the time the bargain was struck"). Moreover, we have applied this principle to contracts for the sale of real property. *See, e.g.*, *Kenyon Ltd. P'ship*, 979 A.2d at 1186–87 (upholding tenants' association's right to purchase property pursuant to a transfer, lease, and option agreement against investor's challenge to the agreement, which "rest[ed] on [the investor's] individual circumstances, as they developed after the contract was executed"); *Urban Invs., Inc. v. Branham*, 464 A.2d 93, 101 (D.C. 1983) (reversing trial court's recission of real estate contract for unconscionability because property purchaser failed to demonstrate contract terms were "unconscionable relative to the mores and business practices of the time and place the contract was executed").

Unfortunately, none of this authority was cited to the trial court by the litigants. But in light of our precedent, the price RFB II paid for the property should not have been assessed in the context of circumstances existing at the time the parties were litigating the summary judgment motions—specifically in the context of the new case law, *4700 Conn 305 Trust*, making it clear that the property had been purchased for $53,000 unencumbered by any liens. Rather, viewed through the proper temporal lens, payment of this sum should have been assessed at the time of the 2015 foreclosure sale, when the property appeared to be encumbered by a substantial mortgage lien (one that only a few months after the sale was in excess of half a million dollars). A purchase price of what was, in effect, approximately $550,000 for this property cannot be deemed unconscionable as a matter of law so as to support a grant of summary judgment.

The trial court expressed concern that RFB II received "an unwarranted windfall" occasioned by this court's decision in *4700 Conn 305 Trust.* But a contract to purchase property at a foreclosure sale, like all contracts, "involve[s] the assessment of risks." *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1043 (Utah 1985). Just as a court cannot strike down a contract "simply because the vicissitudes of time proved it to be a 'bad' bargain for one of the parties," *Weisel v. Beaver Springs Owners Ass'n*, 272 P.3d 491, 501 (Idaho 2012) (internal

quotation marks omitted), a court cannot set aside a foreclosure sale because a change in the law transforms a market-rate purchase into a bonanza. *See* 59A C.J.S. Mortgages § 1166 (2021) (explaining the fact that "property might sell for much more at a later indefinite time" "is not ground for setting aside the [foreclosure] sale").

For the reasons stated above, we reverse the trial court's grant of summary judgment for Deutsche Bank and remand for further proceedings consistent with this opinion.

*So ordered.*